## Commonwealth *v.* Sunderlin, Appellant.

*Criminal law—Indictment—Grand jury—Presentment.*

A bill of indictment against public officers was prepared and sent up by the District Attorney on the direction of the court following a presentment by the grand jury recommending such course of action. The defendants moved to quash the indictment because the presentment did not show affirmatively that the subject with which it dealt was given in charge by the court to the grand jury. The motion was overruled. On appeal it appeared that the charge of the court to the grand jury printed in the appellee's paper-book and not challenged, distinctly and specifically gave the very matter in question to the grand jury. It was also alleged that witnesses were called and sworn before the grand jury without authority. It did not appear that any witnesses were in fact called or sworn. *Held*, that the action of the lower court in refusing to quash the indictment was proper.

An indictment is sufficient where each count plainly charges the offense intended in language practically identical with that used by the legislature in defining the offense. If more detailed information is necessary to enable the defendant to prepare his defense, an application for a bill of particulars is the proper remedy.

*Criminal law—Public officers—Indictment—Evidence—Expert witness.*

On the trial of an indictment against county commissioners for fraudulent

acts connected with contracts for county bridges, commissioners of a neighboring county who had not seen the bridges in question, and had no experience in purchasing material for bridges, or in erecting them, and who were neither engineers nor mechanics, are not competent to testify as to the market price of the bridges in question.

In such a case testimony of a witness should be excluded which is merely an estimate of what would be the average cost of a bridge he would build, according to his own plans, on one of the sites in question; but the written bid of a bridge company for one of the bridges in controversy is admissible.

*Appeals—Assignments of error—Practice, Superior Ct.*

The onus is upon an appellant to make out his assignments of error affirmatively.

The appellate court will not reverse on account of the reception or rejection of written evidence without being furnished either with the paper in question, or a copy of it.

Argued April 19, 1906. Appeal, No. 17, Oct. T., 1906, by defendant, from judgment of Q. S. Potter Co., Dec. T., 1904, No. 35, on verdict of guilty in case of Commonwealth v. D. A. Sunderlin. Before Rice, P. J., Porter, Henderson, Morrison, Orlady and Head, JJ. Reversed.

Indictment against county commissioners for being illegally interested in contracts for public bridges. Before Thomas, P. J., specially presiding.

The facts are stated in the opinion of the Superior Court.

Verdict of guilty, upon which judgment of sentence was passed.

*Errors assigned* were (1–8) refusing to quash indictment; (14–20) various rulings on evidence referred to in the opinion of the Superior Court.

*W. K. Swetland*, for appellant.—The record does not show that the matters contained in the indictment were given in charge to the grand jury by the court: Com. v. Green, 126 Pa. 531; McCullough v. Com., 67 Pa. 30; Com. v. Kulp, 5 Pa. Dist. Rep. 468.

It is well settled by the decisions of our courts that the names of the witnesses must be indorsed by the district attorney upon the bill of indictment: Commonwealth v. Wilson et al., 6 Kulp, 40; Commonwealth v. Price, 4 Kulp, 289; Commonwealth v.

Frescoln, 11 Lanc. L. Rev. 161; Jillard v. Commonwealth, 26 Pa. 169; Commonwealth v. Schall et al., 5 York, 139.

A defendant has the right to have the indictment certainly and precisely in the description of the crime charged, that a verdict may clearly indicate what he has been relieved of or what he has to suffer: Commonwealth v. Johnson, 13 Pa. C. C. Rep. 543; Randolph v. Commonwealth, 6 S. & R. 398; Commonwealth v. Gillespie, 7 S. & R. 469.

We submit that the witnesses were not qualified under the evidence to give any intelligent opinion as to the market price: Railway Co. v. Vance, 115 Pa. 325; Curtin v. Ry. Co., 135 Pa. 30; Michael v. Pipe Line Co., 159 Pa. 99; Galbraith v. Phila. Co., 2 Pa. Superior Ct. 359.

*L. T. Hoyt,* for appellee, cited: Com. v. Hurd, 177 Pa. 481; Com. v. Taylor, 2 Pa. Dist. Rep. 743; Com. v. Dietrich, 7 Pa. Superior Ct. 515; Williams v. Com., 91 Pa. 493; Com. v. McCoy, 10 Pa. Superior Ct. 598; Com. v. Ault, 10 Pa. Superior Ct. 651; Com. v. Miller, 2 Parsons, 480; Com. v. Kaas, 3 Brewster, 422; Com. v. Carson, 21 Pa. Superior Ct. 48; Com. v. Mentzer, 162 Pa. 646.

OPINION BY HEAD, J., June 30, 1906:

In disposing of this case we cannot see that any good purpose would be subserved by a separate discussion of each one of the score of assignments of error presented by the record. Eight of these assignments attack the correctness of the ruling of the court below refusing to quash the indictment, and to sustain a motion in arrest of judgment, made after verdict, based on the same reasons as was the motion to quash.

The prosecution in this case was not begun in the usual way by an information and a preliminary hearing before a committing magistrate resulting in the defendants being committed or held to bail for a trial in court; but the bill was prepared and sent up by the district attorney on the direction of the court, following a presentment by the grand jury recommending such a course of action. The defendants were public officers, being county commissioners of Potter county, and the public generally was interested in the manner in which they conducted themselves in office and transacted the public business com-

mitted to their care.   The court might rightfully then charge
the grand jury to investigate the public and official conduct of
the defendants and make any presentment following thereon
which such investigation would warrant, and if a presentment
recommending the submission of a bill resulted, the power and
duty of the court to so order would be beyond question.   So
much is expressly decided in Commonwealth v. Hurd, 177 Pa.
481.   But it is argued, the presentment does not show affirma-
tively that the subject with which it deals was given in charge
by the court to the grand jury.   Why should it?   The grand
jury is composed of laymen drawn from the body of the county.
They are not learned in the law or expected to be.   There is no
form in which their presentment is to be framed and no require-
ment of statute or precedent as to what it shall contain.   If, in
substance, that body presents that it has investigated the con-
duct of certain public officers and suggests that an indictment
be sent up, what law demands that their presentment must show
affirmatively that their action was responsive to some previous
action on the part of the court, or originated in a disclosure
made by some member of the jury itself?   There can be no
presumption that a question upon which a grand jury has acted,
and upon which it would confessedly have power to act, if
duly submitted by the court, was acted on without such sub-
mission.   The appellant has not attempted to establish the al-
legation of fact upon which his argument is based.   His paper-
book does not exhibit any transcript of the charge to the grand
jury, although " the onus is upon the plaintiff in error to make
out his assignment affirmatively : " Aiken v. Stewart, 63 Pa.
30.   If the charge to the grand jury could not be brought on
the record to show just what the court had given them in
charge, a grand juror might have been called to testify that
the subject-matter of their presentment had not been formally
brought to their notice by the court and thus the fact could be
made to appear : Com. v. Green, 126 Pa. 531.   But the ap-
pellee prints in its paper-book what purports to be a complete
copy of the charge of the court to the grand jury, the correct-
ness of which is not challenged, from which it appears that the
very matter in question was distinctly and specifically given
in charge to the grand jury by the court.   The whole argument
on this branch of the case, resting as it does on an unwarranted

presumption, itself drawn from an alleged fact which does not exist, must be regarded as unsound. The same line of reasoning leads us to a like conclusion as to the argument based on the allegation that witnesses were called and sworn before the grand jury without authority. It does not appear that any witnesses were in fact called or sworn. The presentment simply states that from " the evidence we have had before us " we recommend, etc., but is silent as to the character of the evidence referred to. This may have consisted solely of an examination of the public records of the county or other documentary evidence, and again we can find no warrant for the assumption, based on the language above quoted, that any witnesses were either called or sworn.

A careful examination of the bill discloses no substantial defects in its structure. Each count plainly charges the offense intended, in language practically identical with that used by the legislature in defining the offenses. More than this cannot be required. If more detailed information was necessary to enable the defendants to prepare their defense, an application for a bill of particulars was the proper remedy.

As the case must go back for another trial on account of the action of the court below we are about to consider, any discussion of the several assignments alleging error in portions of the charge and answers to points becomes unnecessary. No controlling questions of law are raised by these assignments, and the situation as to the testimony, at the conclusion of the next trial, may be entirely different from what it was before, and will doubtless receive adequate treatment at the hands of the learned trial court.

We are forced to the conclusion, however, that the court below fell into a serious error in the admission of the evidence complained of in the eleventh and twelfth assignments. The witnesses, Putnam and Reese, were county commissioners of Tioga county and as such officers had signed contracts for several iron or steel bridges erected in that county during their terms of office. They identified the plans of these bridges, showing their length, width of roadway and weight-carrying capacity, and testified to the prices paid for these structures. These plans and the contracts based on them were offered and admitted in evidence over the objection of the defendants, and

their admission constitutes the fourteenth assignment of error. Had this testimony been accompanied or followed by proof of the fact that the bridges which were actually constructed in Tioga county did, in fact, correspond, in material, workmanship, strength, durability and value, with the plans, we do not say that, in an investigation of this character, such evidence might not properly aid the jury in arriving at a conclusion on the main issues involved. But the witnesses were wholly unable to say anything on that all-important subject. Neither of them had ever purchased any material of which a bridge is composed or had any experience whatever in the work of erecting such material into a bridge structure. Neither was an engineer or mechanic of any kind. Neither could design a bridge or any part of it, calculate the weight, strength or cost of the material necessary to be used, nor even determine whether the bridges they bought were composed of iron or steel, or of material that was new or second hand when the bridges were built. The testimony, therefore, as to the cost of the bridges in Tioga county, and the plans and contracts according to which they were supposed to be constructed was, in our judgment, utterly worthless, because, non constat the plans called for bridges of a certain kind, those actually furnished may have been of very inferior quality and worth even less than the prices paid. We are not furnished with any copies of these various exhibits, however, and if we follow the long-established rule of the Supreme Court, as laid down in Aiken v. Stewart, supra, we would " not reverse on account of the reception or rejection of written evidence without being furnished either with the paper in question or a copy of it."

But the witnesses were permitted to go much further. Notwithstanding their statements that they had never seen nor examined either of the two bridges in Potter county which were the subjects of investigation, and their repeated denials that they possessed any expert knowledge of bridge material or construction, or indeed any knowledge except that acquired from the making of several contracts for bridges under the conditions already referred to, they were permitted, under objection as to their qualifications, to examine the plans and specifications of the Potter county bridges and then give to the jury their opinion as to the fair market price of such bridges.

We cannot but think these witnesses were wholly lacking in the qualifications, the possession of which alone could give to such opinions any value as evidence. It is difficult to conceive that a bridge, a completed structure, built on a particular site, at a particular time, and according to special design, could have a market price, although the various trusses, beams, plates, angles, rivets and bolts of which it is composed, and the labor necessary to assemble and erect them, might and probably would have such price. It is a matter of common observation and experience that men can be found possessed of such special knowledge as would enable them, after a thorough inspection of a bridge, to determine the various classes of material entering into its construction, the quality and cost of each, and who could thus arrive at an intelligent conclusion as to the fair cost of such a bridge. With such evidence before them, along with the price actually paid by the defendants, the manner of letting the contracts and making payments and other like circumstances, the jury could intelligently and properly determine whether the facts established were consistent with the innocence of the defendants, or could only be rationally accounted for on the theory that the charges of corrupt collusion or criminal neglect of duty were well founded.

We think also the testimony of the witness Thomas Leet (thirteenth assignment) should have been excluded. His estimate of what would be the average cost of a bridge he would build, according to his own plans, on one of the sites in question, was entirely irrelevant, and he completely disqualified himself from giving any opinion as an expert on the real question under consideration.

We can see no sound reason for the rejection of the offer of the written bid of the Owego Bridge Company for one of the bridges in controversy. The fundamental question at issue was the honesty and good faith of the defendants in letting these contracts. The bids, if any, made by competing companies would seem to be of considerable importance in such an inquiry. If there were any suspicious circumstances connected with this or other rejected bids, these too should be placed before the jury, who, with the aid of the court, would be able to give all such circumstances their proper weight. But as the record stands we think the defendants were fairly entitled to

the benefit of this piece of evidence and, therefore, that it should have been admitted.

Without further elaborating this opinion we think we have sufficiently indicated our reasons for the judgment we are about to enter. The eleventh, twelfth, thirteenth and fifteenth assignments of error are sustained and all the remaining ones are dismissed.

Judgment reversed and a venire facias de novo is awarded.