# Commonwealth *v.* Shaffer, Appellant.

*Criminal law—Pleading—Duplicity—Indictment.*

1. Duplicity is found to exist in criminal pleadings when two or more offenses are charged in the same count of an indictment; but there is no objection to charging different similar offenses in separate counts.

2. An indictment is sufficient where each count plainly charges the offense intended in language practically identical with that used by the legislature in defining the offense.

3. An indictment for embezzlement is sufficient which charges that the money appropriated was placed in the defendant's hands by certain parties named, and that it was money belonging to the prosecutors.

*Criminal law—Embezzlement—Evidence—Attorney and client.*

4. On the trial of an indictment against an attorney at law for em-

bezzlement of a client's money intrusted to him for the purpose of making loans, where the defendant claims that he had not only paid back all of the moneys, but also interest and profit on the same, it is proper to permit the defendant to show the dates when moneys were paid to him, the dates when he paid back moneys, the rate of interest on the loans, and the indebtedness of prosecutors to the defendant for professional services apart from the loans.

Argued Dec. 6, 1910.  Appeal, No. 244, Oct. T., 1910, by defendant, from judgment of Q. S. McKean Co., Feb. Sessions, 1910, No. 14, on verdict of guilty in case of Commonwealth v. H. E. Shaffer.  Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ.  Reversed.

Indictment for embezzlement.  Before PRATHER, P. J., specially presiding.

The opinion of the Superior Court states the facts of the case.

Verdict of guilty, upon which judgment of sentence was passed.

*Errors assigned* appear by the opinion of the Superior Court.

*A. L. Cole*, with him *Thos. H. Murray, A. P. Huey, E. L. Keenan*, and *Herbert K. Shaffer*, for appellant, cited: Com. v. Fahnestock, 15 Pa. C. C. Rep. 598; Com. v. Gerdemann, 11 Phila. 397.

*Guy B. Mayo*, district attorney, and *F. D. Gallup*, with them *F. J. Woods* and *C. W. Shattuck*, for appellee, cited: Com. v. King, 35 Pa. Superior Ct. 454; Com. v. Barton, 20 Pa. Superior Ct. 447; Com. v. Shoener, 25 Pa. Superior Ct. 526; Com. v. Gouger, 21 Pa. Superior Ct. 217.

OPINION BY BEAVER, J., March 3, 1911:

Defendant was charged, in an indictment containing three several counts, with having embezzled moneys collected by him, as attorney, belonging to M. & L.

Schriever. The several counts are practically identical, except that in the first he is charged with having "received the sum of one hundred and forty dollars from one, Joseph B. Ditz, and fraudulently appropriated the same to his own use"; in the second count, with having "received the sum of fifty dollars from one, M. N. Zeller, and appropriated it" in like manner, and in the third count, with having "received one hundred and eighty-seven dollars from one, H. J. James, and having fraudulently appropriated it."

The manner in which the offense is charged in the indictment is in its essential parts: "That H. E. Shaffer, attorney at law of said county, on the eighteenth day of August, in the year of our Lord, one thousand nine hundred and eight, at the county aforesaid, and within the jurisdiction of this court, being then and there in the employ of Mary Schriever and Lizzie Schriever, partners as M. & L. Schriever, as their attorney, and as such attorney entrusted with large sums of money belonging to said firm, for the purpose of making loans, and as such attorney collecting and receiving for safe custody the property and moneys of said M. & L. Schriever, did by virtue of such employment, then and there, and while so employed as aforesaid, receive and take into his possession one hundred and forty dollars ($140.00) from one Joseph B. Ditz, of moneys belonging to said firm of M. & L. Schriever, being paid to the said H. E. Shaffer by the said Joseph B. Ditz, on account of a loan negotiated and made by the said H. E. Shaffer, to the said Joseph B. Ditz, of moneys of the said M. & L. Schriever, and for and in the name and on account of the said M. & L. Schriever, employers, and did then and there unlawfully, fraudulently, and with intent to defraud the said M. & L. Schriever, convert and appropriate to his own use the said one hundred and forty dollars ($140.00) contrary to the form of the act of the General Assembly in such cases made and provided, and against the peace and dignity of the Commonwealth of Pennsylvania."

It is alleged by the defendant that this indictment will not sustain the judgment of conviction entered by the court, first, because it contains counts charging different offenses, and, second, that it is bad, because of duplicity.

There is no duplicity. That is found to exist when two or more offenses are charged in the same count of an indictment, but there is no objection to charging different similar offenses in separate counts. We held in Com. v. Gouger, 21 Pa. Superior Ct. 217, that "It cannot be objected in error, or on demurrer, or in arrest of judgment, that two or more offenses of the same nature, on which the same or similar judgments may be given, are contained in different counts of the same indictment." This was followed in Com. v. Shoener, 25 Pa. Superior Ct. 526, and also in a case determined at this term—Com. v. Kleckner.

Nor is the objection that "The indictment does not sufficiently charge an offense under the 114th section of the Penal Code" of March 31, 1860, P. L. 382, valid. By the code itself, it is provided that "Every indictment shall be deemed and adjudged sufficient and good in law, which charges the crime substantially in the language of the act of assembly prohibiting the crime, and prescribing the punishment, if any such there be," etc. In accordance with this provision of the code, we have uniformly held, as in Com. v. Sunderlin, 31 Pa. Superior Ct. 349, that "An indictment is sufficient where each count plainly charges the offense intended in language practically identical with that used by the legislature in defining the offense."

It is also alleged that the indictment does not charge that the money specifically intrusted by M. & L. Schriever to the defendant was converted by him to his own use, with intent to defraud, etc. It is true that it is not alleged that the money said to have been appropriated by the defendant was placed in his hands by M. & L. Schriever, but that the money alleged to be fraudulently appropriated by him was money paid to him by the par-

ties named, being the money belonging to them, the said
M. & L. Schriever, and this is sufficient to maintain the
charge.

We find no substantial defect in the indictment.  The
several counts clearly set forth the misdemeanor charged
in each, and, if there were nothing else in the case, we
would have no difficulty in affirming the judgment.

The first assignment of error is bad under our rules, in
that it contains more than one subject, although the dif-
ferent reasons assigned for quashing the indictment are
all contained in one motion and the act of the court in
overruling it.  We have briefly considered the reasons
therein set forth, however, in order to show the grounds
and authorities upon which our opinion as to the validity
of the indictment are based.

The motion of the commonwealth to quash the appeal,
because of the failure to refer to the pages upon which the
offers of testimony ruled out are contained, and the failure
to print the indictment, have both been remedied, so that
the indictment is now found in the paper-book of the ap-
pellant, and the pages upon which the several rulings of
the court complained of have been inserted.  It is, there-
fore, entirely possible to consider the several assignments
of error, without serious inconvenience, and for this rea-
son the motion to quash is overruled.

The assignments of error from two to ten, inclusive, re-
late to the rejection of the defendant's offers of evidence.
These can be considered together under the formal offer
and the ruling thereon, contained in the ninth assign-
ment.  The offer was: "It is proposed by the defendant to
prove, as bearing upon the good faith of the defendant,
and also as bearing upon his right to insist upon a settle-
ment of all accounts, including his own claim for services,
and also as bearing upon the truthfulness of the testimony
of the prosecutrix, the following facts:

"(1)  The full amount of money received by the de-
fendant from the prosecutrix, from the time his trans-
actions began with her down to the first of June, 1909,

which amounted to $147,842.74; this is to be proved by showing the date of each separate payment to him and the amount thereof, aggregating the sum just stated; (2) including the amount of money (paid) by him to her from time to time, including date of each payment, and the amount thereof, which amount aggregated $169,433.30; this to be evidenced by a statement of each payment and the prosecutor's receipt corresponding thereto; (3) that the amount so paid by him covered the full amount paid by her to him, and ten per cent interest thereon, and about $2,000 in excess thereof.

"This testimony will be offered in connection with the testimony of the prosecutrix, showing her failure to evidence the amount of money paid by her to the defendant, and the amount of moneys received by him from her; it is also offered in connection with the testimony of the defendant as to the nature and character of the services rendered by him to the prosecutrix, and for which he received no compensation whatever. It is also offered in connection with the testimony of the prosecutrix that the amount of interest she was to receive upon moneys loaned by him was ten per cent; and further, that the payments to her included ten per cent interest up to the date when they were paid to her.

"By Mr. Gallup: This being in substance the same offer, it is objected to as incompetent, immaterial and irrelevant for the purpose offered, and for the following special reasons: (1) It is not based upon a correct statement of the evidence in the case; (2) the defendant, being an attorney, knows that the Statute of Limitations for services would be six years, and, therefore, could not be evidence of good faith for services antedating the period of six years; that under the evidence of the defendant himself, no demand was ever made for any compensation until at a time in May, 1909, when he was as he says, mad, and at that time no amount was named; that the defendant has already testified that of the moneys he had received to loan for the prosecutrix, there is still out

$18,000.; and as constituting a defense in this case, the services for which he would be entitled to receive should be confined to services incidental to the loans in question named in the indictment.

"By the Court: Objection sustained.

"By the Court: The court will say again, we will allow you to show each loan made for the prosecuting witness by the defendant, the amount of money collected therefor and the amount of money turned over to the prosecuting witness."

It is to be borne in mind that the indictment specifically in each count charges that the defendant "as the attorney of M. & L. Schriever was entrusted with large sums of money belonging to said firm for the purpose of making loans, and, as such attorney, collecting and receiving for safe custody the property and moneys of said M. & L. Schriever," etc.

It is to be presumed that some significance was attached by the commonwealth to the fact that large sums of money were intrusted to the defendant for investment and collection, etc. It is not charged that these moneys were paid to the defendant by the prosecutrix and her sister in each case for separate loans, nor that each loan when collected was returned separately.

Upon the cross-examination of the prosecutrix by the defendant, the effort was made to secure from her a statement of the loans made and the amount of money loaned by the defendant in behalf of her and her sister to the several borrowers. In her examination, she was asked: "Q. During the time Mr. Shaffer was acting for you, do you know how many loans he made for you? A. I have not looked it up. Q. Do you know about? Was it in the neighborhood of 1,000 loans, or more? A. I have not looked into the matter any further than this indictment. Q. Do you know anything about that? A. I am not pretending to know. Q. Do you know, in the aggregate, how much money you gave to him to loan for you? Objected to by counsel for commonwealth as immaterial and not

cross-examination.   Mr. Cole: We propose to follow this by testimony tending to show that Mr. Shaffer paid back to her, in the course of their dealings, all the money that he received from her and more than $20,000 in addition to that, and to show, if necessary, her receipts for that amount of money.   Objected to by commonwealth as immaterial and not cross-examination.   By the Court: We think that is part of your case, to be offered in your own behalf.   The objection is sustained."

If the defendant had been allowed to present as part of his case the testimony which was here ruled out, there would have been probably no serious consequences resulting from the rejection as cross-examination of the prosecutrix of what was offered at the time and what was more distinctly and definitely offered in the formal proposition contained in the ninth assignment, which we are now considering.

In this connection, it is proper to consider the affirmation by the court of the thirteenth, fourteenth and fifteenth points of the defendant, which were:

"Thirteenth.   To constitute the embezzlement it is necessary that there should have been at the time of the alleged conversion, a criminal intent, and it follows that if property or money is converted or withheld under a bona fide claim of right, and upon reasonable grounds for such claim, the conversion is not embezzlement, although the claim may not have been legally recoverable against the said property.

"Fourteenth.   Before the offense of embezzlement can be made out, it must appear beyond a reasonable doubt that the defendant at the time of conversion acted with a fraudulent intent, and converted the property or money in such a way as exhibited a design to cheat and defraud the owner.   Mere failure to pay over money when payable, is not enough, unless it be shown beyond a reasonable doubt, that such failure was accompanied by such fraudulent intent.

"Fifteenth.   An attorney at law has a lien on a general

balance from loans and collections in his hands belonging to his client, for services and expenditures connected with said loans, in the absence of any apportionment of said services and expenditures among said loans, and until such lien is discharged he is not liable to a prosecution for embezzlement of such money or balance."

We are in entire accord with the propositions thus laid down by the defendant and affirmed by the court, but the defendant could get but little, if any, benefit from the affirmation of these points, when the testimony upon which they were based had been rejected.

Assuming now that there was an intention on the part of the commonwealth to attach importance to the fact that the prosecutrix and her sister had placed large sums of money in the hands of the defendant for use under their contract with him as their attorney, for making loans, and in view of the fact that the prosecutrix was not allowed to be examined as to the amount so intrusted to him, the number of loans and other pertinent inquiries in regard thereto, and in view of the particularity with which the offer which we are now considering was made, and the offer that the date of each separate payment to the defendant and the date of each payment to the prosecutrix, to be shown if necessary by her receipt corresponding thereto, and that the amount paid by the defendant to the prosecutrix was in excess of the amount received by the defendant for her account, to be loaned, together with ten per cent interest thereon, which was shown by her to be her contract with the defendant, and in view of the further fact that the plaintiff claimed, and proposed to show, that the prosecutrix and her sister were indebted to him for professional services outside of the loans so made, we are of opinion that the offer should have been received. The latitude which the court was willing to allow, as expressed at the time: "The court will say again, we will allow you to show each loan made for the prosecuting witness by the defendant, the amount of money collected therefor and the amount of money turned

over to the prosecuting witness," does not seem to us to have been sufficiently wide.   It eliminated entirely the defendant's claim for professional services and moneys expended on his clients' account and for their benefit. It is not shown, conclusively at least, that each proposed loan was given to the defendant by the prosecutrix, nor did it appear that each loan was accounted for separately. The defendant paid moneys at different times, as we understand the testimony, covering different loans, and the accounts between them could have been satisfactorily reached by showing the moneys received by the defendant and the amount paid to the prosecutrix and her sister in settlement of the amount loaned on their account by the defendant, together with interest on the same from the time each loan was made until it was returned, and that is what the offer proposed.

The court seemed to have been suspicious that the offer was intended to go far afield and, in his opinion upon the rule for a new trial, he goes farther and says: "As a matter of fact, there never was any desire or intention on the part of defendant's counsel, to offer the papers and receipts in evidence.   The persistent offer and argument of defendant's counsel was to prove that the defendant's agency, attorneyship or trusteeship, had been a profitable one for his client, and that he had turned over to the prosecutor as many dollars as he had received, and a large profit or interest thereon."

This does not seem to us to be justified by the facts as they appear.   The offer seems to have been made in good faith.   The aggregate amount acknowledged to have been received by the defendant was, of course, subject to contradiction by his client, as was also the amount paid, but the offer was to exhibit the receipts of the client to show that the gross amount was what was alleged in the offer, and that they accounted for all the loans which he had made, together with ten per cent interest up to the actual time of the payments.   This, of course, was more than an offer to show a profitable

business connection between the client and her attorney. It was in effect, or at least the defendant could have been held under the terms of the offer, to make such an exhibition to the jury as the court intimated it was willing to allow. As the court said, when the same subject was under consideration in the cross-examination of the prosecutrix: "We think that is part of your case, to be offered in your own behalf," and yet, when offered, even more specifically and with the ground laid by the testimony of the prosecutrix for contradiction, or at least for explanation, it seems to us it was even more than at the time of the rejection of the offer as cross-examination a part of the defendant's case. It assumes even greater significance and importance, when viewed in connection with the affirmation of the defendant's thirteenth, fourteenth and fifteenth points which have been quoted in full. An admission of the offer, coupled with an admonition by the court that it was to be presented as to detail in the manner indicated by the court, would have tested the sincerity of the counsel and would have kept the matter entirely within the control of the court, as, of course, it was.

The defense of the defendant was based upon the fact that, considering the professional services which he had rendered on behalf of the prosecutrix and her sister and the moneys paid out by him on their behalf in the conduct of their business, in such an amount as would absorb and more than absorb the specific amounts alleged to have been embezzled by him, as shown in the several counts of the indictment, his clients would have been actually indebted to him instead of his having appropriated any of their money for his own use. The truth of this proposition was affirmed by the court in a theoretical way in affirming the points of the defendant, but, having shut out the testimony which related thereto, there was nothing, of course, upon which the truth of this point could be seriously argued or definitely established. We think, therefore, that the defendant was

really harmed and his defense practically uprooted by the failure to admit the offer, as contained in the ninth assignment of error. This is the important point in the case and outside of it we find no harmful error. If the question which it raised were eliminated, there would probably be no reversible error.

The language of the court, in imposing the sentence, is objected to and is objectionable. The sentence, as imposed, would seem to indicate that the defendant had been convicted of larceny. This, although technically incorrect, might have been remedied by a reversal, sending the case back for a resentence in accordance with the facts, but, because of the rejection of the plaintiff's offer, to which we have given the most serious consideration, his defense was practically shut out, and it is therefore necessary to have the case retried in order to give him the benefit of the evidence offered.

Judgment reversed and a new venire awarded.

RICE, P. J., HEAD and PORTER, JJ., dissent.