## Commonwealth *v.* John Hurd, Appellant, et al.

177     481
23 SC [1]497
177     481
31 SC [1]352

177    481
40SC[3]357

*Criminal law—Bill of rights—Practice, Q. S.—Misdemeanor in office—Information—Indictment.*

The court of quarter sessions may call to the attention of the grand jury a charge that a county commissioner has been concerned in public contracts, and if the grand jury reports that sufficient evidence was adduced before them to support the charge, the court may direct the district attorney to prepare and submit an indictment.

It seems that under section 10 of the bill of rights of the constitution of Pennsylvania which provides that "No person shall for any indictable offense be proceeded against criminally by information . . . . except for oppression or misdemeanor in office," criminal proceedings may be instituted by information against a county commissioner who has been concerned in public contracts.

*Criminal law—Grand jury—Presentment.*

The term "presentment" means the report of the grand jury of an offense, whether founded on their own knowledge or on testimony heard by them.

*Criminal law—County commissioners—Public contracts—Indictment—Act of April 15, 1834.*

An indictment under the act of April 15. 1834, sec. 43, P. L. 537, charging two county commissioners with being concerned in public contracts will not be quashed because it avers that the public contracts in question were made not under the authority of the commissioners as a board, but under the authority of the two defendants acting as county commissioners.

*Indictment—Public officers—Appeal from auditor's report.*

An indictment against county commissioners for being concerned in public contracts will not be quashed because of the pending of an appeal by the commissioners from the report of the county auditors surcharging them with the amount averred in the indictment to have been fraudulently obtained by them.

*Criminal law—New trial—Misconduct of juror—Statement by juror.*

It is no ground for granting a new trial in a criminal case that a juror during the progress of the trial made a casual statement about the case, without harmful tendency, which showed rather a tendency to gossip, than a prejudice against the prisoner.

Argued April 22, 1896. Appeal, No. 115, Jan. T., 1896, by defendant, John Hurd, from order of Q. S. Blair Co., June T., 1895, No. 77, refusing to quash an indictment. Before STER-RETT, C. J., McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Indictment against county commissioners for being concerned in public contracts.

The defendants moved to quash the indictment for the following reasons :

1. The indictment does not charge that the county of Blair or the board of county commissioners, made any contract or authorized the construction of any public work, improvement or repairs of the courthouse. The 43d section of the act of the 15th of April, 1834, under which this bill is framed, forbids county commissioners to be interested in public work undertaken by the county in its corporate capacity, and in the absence of an averment that the county, or its representatives acting officially as required by the 19th section of the same act, had made such a contract or undertaking, there could be no violation of the act by the defendants, and no conviction.

2. As there is pending an appeal from the findings of the county auditors to the court of common pleas of Blair county, which, when tried, will determine whether the commissioners have properly accounted for all the public moneys which they may have disbursed, there can be no trial of defendants in a criminal court for an alleged misappropriation of those moneys, until the tribunal in which the jurisdiction of the question was first obtained has first passed upon that question, and entered upon its record a final adjudication.

3. The indictment is not based upon an accusation made before a committing magistrate, grounded upon probable cause, and supported by oath or affirmation. Under certain exceptions, which are not found in this case, without such formal accusation, a citizen cannot be held to answer under the constitution and laws of Pennsylvania. Whilst a grand jury may make a presentment, such presentment must be made by them from their own knowledge and observation. The presentment in this case having been made after the court had called the attention of the grand jury to certain matters in controversy in a settlement of the accounts of the defendants with the county auditors, no authority was thereby given to the jury to make such presentment, because the court had no power to call their attention to the investigation of such offenses as are alleged.

The offenses charged are not of that nature which allow of this extraordinary intervention of the court, and an investigation and presentment of the grand jury.

BELL, P. J., filed the following opinion:

In a report of the county auditors filed in the court of common pleas it was charged that at least one of the commissioners of Blair county had been concerned in public contracts. Deeming this charge, if true, to be of such a nature as to warrant investigation by the grand jury, this court called the attention of that body to the subject at June sessions and directed them to investigate the matter. The grand jury made return in the form of a presentment against defendants, whereupon the district attorney was directed to prepare and submit an indictment which was returned a true bill.

One of the main reasons urged for quashing the indictment is that the action so taken was in violation of the constitutional bill of rights, inasmuch as a prosecutor is wanting, and by the method pursued, defendants were denied a preliminary hearing, and were not proceeded against according to due process of law.

It seems to be a significant circumstance—as showing the intent of the framers of the constitution—that persons charged with misdemeanor in office—and the offense charged in the present indictment is misdemeanor in office—by the language of section 10 of the bill of rights, are deprived of certain rights accorded to other accused persons. "No person shall for any

indictable offense be proceeded against criminally by information except for oppression or misdemeanor in office." Criminal proceedings by information were odious to our forefathers and were oppressive to the citizens; but the framers of the constitution seemed to recognize the fact that the nature of the crime of "misdemeanor in office" was such as to warrant the allowance of an information. Possibly the motive actuating them in such allowance was twofold; first, that the offense concerned and affected the public at large; second, the offense might be of such a character as to affect no individual as an individual, hence it was unlikely that any single individual would be at the trouble of bringing a prosecution. But it is unnecessary to pursue this inquiry based on the same exception further, or to attempt to sustain the indictment now in question by attributing any force to the language quoted, as the present case seems to fall within the first exception stated by Judge KING in case of Lloyd & Carpenter, 3 Clark, 188. After laying down the general rule that an alleged offender should be proceeded against by affidavit before a committing magistrate, preliminary hearing and binding over to court, Judge KING proceeds to state the exception to said general rule: "The first of these is where criminal courts of their own motion may call the attention of grand juries to, and direct the investigation of matters of, general public import which from their nature and operation on the entire community justify such intervention. In such cases the court may properly, in aid of the inquiries directed by them, summon, swear and send before the grand jury such witnesses as they may deem necessary to a full investigation of the evils intimated, in order to enable the grand jury to present the offense and the offenders." It is true that Judge KING instances the case of a great riot, but his reasoning is equally applicable to any case where the public, as a public, in contradistinction from individuals who can do their own prosecuting, is concerned, and this court deemed the present case one "of general public import" justifying investigation by the grand jury. A precedent for the course pursued in the present case is found in Commonwealth v. Taylor, 2 Dist. Rep. 743. In this case, as in the present, there was a report of county auditors charging frauds and peculations committed. Judge GREEN directed the district attorney to submit an indictment to the

grand jury and refused to quash the same. It is true that in the present case instead of commencing proceedings by directing the district attorney to submit an indictment, the grand jury were directed to investigate, and an indictment was only ordered to be submitted after the said grand jury had reported that there was evidence to support the charge adduced before them. But if the court had a right to order the submission by the district attorney of an indictment, why should the defendants complain that such right was not exercised until the grand jury had investigated the matter and made a presentment? Or how could the defendants be prejudiced by the action of the court in directing an investigation before any indictment was submitted or any steps prejudicial to the defendants taken? The further objection urged, that the indictment is indorsed as founded " upon presentment of the grand jury," and such presentment can only be made on the knowledge of the grand jurors, is without merit. The term " presentment " has come to mean a report of the grand jury of an offense, whether founded on their own knowledge · or on testimony heard by them. It has been so used in this court in a number of instances, principally in reports of offenses against the liquor laws. It was so used by Judge KING in the portions of his opinion before quoted. In Wharton's Criminal Pleading and Practice, 9th ed. sec. 86, it is said: " A presentment, properly speaking, is an accusation made ex mero motu by a grand jury of an offense, upon their own observation and knowledge or upon evidence before them, and without any bill of indictment laid before them at the suit of the government. . . . Upon a presentment the proper officer of the court must frame an indictment before the party accused can be put to answer to it."

The indictment is framed under the act of 15th of April, 1834, section 43 [Pur. Dig. ed. of 1894, page 449] which provides that: " If any county commissioner shall be concerned in any contract, or shall be directly or individually interested in the construction of any public work, or any improvement, made or undertaken under the authority of the commissioners of the said county, the same shall be deemed a misdemeanor in office, and such commissioner shall be fined in a sum not exceeding five hundred dollars, and shall be adjudged by the court to be removed from office."

We are asked to quash the indictment because it avers that the public contracts in question were made not under the authority of the commissioners as a board, but under the authority of the two defendants acting as county commissioners. The authorities cited by the very able counsel of defendants do undoubtedly establish the rule that to bind the county the contracts should be made by the board of commissioners, not by two of the commissioners; but suppose two of the commissioners do undertake to make a contract, and draw orders on the treasury for the money to pay for the same, and do corruptly and fraudulently receive part of said money, are they to be allowed to take advantage of their own wrong, and allege that the contract they made was illegal and therefore was no contract? The act of assembly in question does not say by authority of the *board* of commissioners; there is no language employed limiting the operation of the law to cases of contracts legally binding the county. The contract averred might have been voidable in the sense that it would have been declared void on application of an aggrieved taxpayer, but, if it was carried into execution, as averred, and was consummated by the payment of the consideration, it was at least a de facto contract. And if a de facto commissioner would be liable to the penalties of the act, by analogy its penalties would also be applicable to the case of a de facto contract. And in Wharton's Criminal Law, section 1572, it is said: "It follows from this that an officer de facto cannot set up want of title to an indictment for misconduct."

We are asked to quash the indictment or to continue the trial, because of the pending of an appeal by the said defendants from the report of the county auditors surcharging them with the amount averred in the indictment to have been fraudulently obtained by them. Indictments for perjury are not to be tried until the civil suit, out of which they arise, is disposed of: Commonwealth v. Dickerson, 3 Clark, 265. But in general a criminal suit and a civil suit arising from the same source may be carried on simultaneously. "Neither will affect the other:" Bishop's Criminal Law, section 264. "There is no compulsion to try the civil suit first. It is entirely within the discretion of the court." Opinion of MITCHELL, J., in Commonwealth v. Dickerson, 7 W. N. C. 433. To allow indictments for perjury, growing out of affidavits made or testimony given, in the course

of civil proceeding, to be tried before the disposal of said civil proceeding, might lead to numerous cross suits for perjury which would be oppressive to court and suitors alike, and might tend to intimidate both parties and witnesses, as is well explained by PARSONS, J., in his opinion in Commonwealth v. Dickerson, supra, but " the reason ceasing the rule ceases," and we see no good reason why a prosecution for misdemeanor in office should be held in abeyance pending an appeal by the defendants in a civil court from a surcharge for the amount alleged to be appropriated. The measure of proof beyond a reasonable doubt is higher in a criminal than in a civil proceeding, and it is scarcely conceivable that a defendant would be convicted in a criminal court and afterwards obtain a verdict in his favor in the civil court. Moreover, delay in a proceeding, where the chief penalty is removal from office, it seems to us should be avoided as far as possible, consistent with the rights of the accused, because such delay might render the law nugatory, by reason of the expiration of the term of office pending such delay.

We have endeavored to carefully consider all that has been urged on behalf of the defendants, but after such consideration we fail to see any sufficient reason for either quashing the indictment in this case or continuing the cause. It is therefore ordered and decreed that the motion to quash Indictment No. 77, June sessions, 1895, be overruled, and that said cause be called for trial on Monday morning, October 14, 1895, at 9 o'clock.

At the trial the jury returned a verdict of guilty.

The defendants moved for a new trial filing the following reason :

The conduct of Samuel Saylor [as shown by annexed affidavits], who as a juror before the evidence was all in, before the argument of counsel upon the evidence had been made, and before the court submitted the case to the jury, went into a public place, and to a large number of citizens announced what the court and jury would do, namely, convict and punish the defendant, is of such scandalous character, and manifests such evidence of prejudgment and disregard of a public duty, that a court of justice sitting in the trial of a most important issue, will give it no sanction, by overruling it, and will not allow a verdict rendered by such a juror to stand.          *

BELL, P. J., filed the following opinion.

The defendant, John Hurd, was given ample time to prepare for trial; he was most ably and zealously defended by distinguished counsel. This court endeavored to afford him a fair and impartial trial; while the evidence was conflicting, the evidence of the commonwealth, if believed, was sufficient to warrant his conviction; when evidence is conflicting it is the especial province of the jury to determine whom they will believe; this jury believed the evidence of the commonwealth.

It is deemed unnecessary to add anything to the foregoing brief epitome of the reasons moving this court in overruling the motion for a new trial for reasons independent of the alleged misconduct of juror Saylor. The actions of jurors should be jealously scrutinized by courts; care should be taken that a fair and impartial trial by competent jurors should be afforded a defendant, and misconduct on the part of jurors, showing a prejudgment of the case, or tending to bring scandal on the administration of justice, should operate to compel the granting of a new trial. If this court were satisfied that juror Saylor did, as alleged on the part of defendant, during the progress of the trial, and after he had been sworn as a juror, at the Williamsburg station, declare that " they," meaning the jury, " would hold Hurd," or if, on that occasion, without exhibiting any bias, said juror did make a loud speech to the crowd of bystanders about the trial in progress, a new trial would unhesitatingly be granted. If there were no evidence before the court but the ex parte affidavits filed by defendant when the motion for a new trial was entertained, the allegation of the defendant might be sustained. But a careful consideration of the evidence taken under cross-examination, before an examiner, satisfies us that Saylor did not say that they, the jury, would hold Hurd, or that they, the jury, would fine Hurd, but that he merely informed a questioner, Mr. Boyd, what would be the penalty in case of a conviction, and in addition he may have recounted some of the evidence offered in the case. George W. Boyd testifies that all that Saylor said was simply a statement of the penalty in case of conviction, and that this statement was elicited by a question of Mr. Boyd. Frank Royer corroborates Boyd, and, in my view of the evidence, J. D. Allender does not contradict Boyd, but Mr. Allender only heard Saylor's answer and

not Boyd's question. The remark attributed to Saylor by B. F. Cooper, that " Hurd would be held," does not necessarily imply a statement by Saylor that the jury would convict Hurd, but is rather to be interpreted as meaning that Hurd was still on trial as, in the same connection, Mr. Cooper implies to Saylor the remark, " they could not hold Funk," and the fact was that prior to the time of the alleged conversation the court had stated that as to Funk there could be no conviction, so that in point of fact this trial was over so far as Funk was concerned. The further remarks, imputed by Cooper to Saylor, it seems to me, at most were but a recital of some of the testimony pro and con. The testimony taken before the examiner, wholly fails to substantiate the claim of defendant that Saylor made a speech to the crowd, or talked loudly about the trial. Even Mr. Cooper, whose statement in his ex-parte affidavit was somewhat emphatic on this last mentioned point, in his testimony before the examiner fails to substantiate his affidavit in this matter, and no one of the witnesses speaks of any loud talking on the part of Saylor, and he could not have talked loudly or very long, as a number of witnesses who were there heard nothing of what he said. Doubtless it would have been much better if Mr. Saylor had refrained from saying anything ; his proper course would have been to have replied to Mr. Boyd, " I am a juror and it is improper for me to talk about the case ; " but the weight of the evidence fails to satisfy me that he made any remark indicating bias, or that his remarks were of such a character as to bring scandal on the administration of justice. What he said partakes more of the character of gossip than prejudice, and I fail to see how the defendant was injured, or the administration of justice greatly scandalized, by what occurred at the Williamsburg station that morning. The law on this subject is thus stated in Thompson & Merriam on Juries, section 365 . . . . " We shall now consider the effect of communications made by jurors to persons not of the panel. It may be stated as a general rule, that such communications afford no ground for a new trial unless they are of such a character as clearly to show a disregard on the part of the juror of what belongs to his position, or an unfitness to discharge the trust reposed in him." Again in section 348, same work, " Whether a communication, then, will afford ground for a new trial, must depend upon its

harmful tendency; all this is to be determined according to the circumstances of each case, having reference to the nature of the communication, the person making it, the time when, the place where, it was made, and other surroundings."

The charges made on behalf of defendant of misconduct on the part of a juror were deemed by this court worthy of the most searching scrutiny, and the closest attention, but as before indicated, the weight of the testimony discloses a case of casual statement, showing a tendency to gossip rather than a prejudice against the defendant. Such tendency to gossip is to be reprehended, and jurors should remember that "silence is golden," but at the same time I fail to see how the defendant was injured, or why a new trial should be granted on this ground.

In this connection a remark in Wharton on Criminal Pleading and Practice, section 837, may be cited, although possibly not wholly applicable. "On the other hand if casual remarks as to the case, made in the presence of a juror, not in any way influencing him, should require a new trial, no case will be decided at all."

November 29, 1895, motion for a new trial overruled, and it is ordered that John Hurd, defendant, appear for sentence on Monday, December 2, 1895, at 9 A. M.

The court sentenced the defendant to pay a fine of $50.00, and to be removed from his office of county commissioner.

*Errors assigned* were in overruling motion to quash indictment, and in refusing to grant a new trial.

*Aug. S. Landis*, with him *Thos. H. Greevy*, for appellant.— The act clearly requires that any business to be transacted is to be done by the action of the board at a called meeting, and then two commissioners are competent to perform official duties; and when not sitting in a meeting of which all have had notice, two of them are not "competent" to perform the duties appertaining to their office: Lecky v. Commissioners of Allegheny County, 6 S. & R. 170; Street Ry. v. Inter. Street Ry., 167 Pa. 101.

Here the criminal act turns upon the determination of the defendants' liability in the civil action, and if in the latter it is found that they have faithfully accounted for the public

moneys, and have disbursed them to those legally entitled thereto, there has been no infraction of the law.

The only safe practice is for the courts to adhere to the recognized constitutional methods of the criminal prosecution of the citizen—the accusation upon oath, founded upon probable cause before a committing magistrate : Wharton's Criminal Law, page 478; Com. v. Taylor, 2 Dist. Rep. 743.

It is a gross misbehavior for any person to speak to a juryman, or for a juryman to permit any person to converse with him, respecting the cause he is trying, at any time after he is summoned, and before the verdict is delivered : Blaine v. Chambers, 1 S. & R. 173 ; Thompson & Merriman on Juries, 447 ; Pool v. Chicago R. R., 6 Fed. Rep. 844.

*Wm. S. Hammond*, district attorney, with him *A. V. Dively*, for appellee.—The refusal to quash the indictment was proper: Lloyd and Carpenter's Case, 3 Clark, 188; Com. v. Taylor, 2 Dist. Rep. 743 ; Wharton's Criminal Pleading & Practice, sec. 86.

Motions for a new trial are not reviewable but are within the discretion of the court below : Cathcart v. Com., 37 Pa. 111; Howser v. Com., 51 Pa. 341; McManus v. Com., 91 Pa. 67.

PER CURIAM, October 5, 1896 :

This case came here under a special allocatur granted by one of the justices of this court. No question was raised as to whether, within the meaning of section 7, clause (a) of the Superior Court act of 1895, the case is one "involving the right to a public office," and it was accordingly argued and submitted to us on its supposed merits. Unfortunately for the appellant, the record discloses no ground on which the judgment of the court of quarter sessions can be reversed.

The first three specifications are to the action of the court in denying defendant's motion to quash the indictment, and in overruling his reasons in support thereof. There appears to be nothing in either of these specifications that would have justified any other course of action. This is so clearly shown in the opinion of the learned judge that further discussion is unnecessary. The indictment is framed under the act of April 15, 1834, which declares : "If any county commissioner shall be

concerned in any contract, or shall be directly or individually interested in the construction of any public work, or any improvement, made or undertaken under the authority of the commissioners of the said county, the same shall be deemed a misdemeanor in office, and such commissioner shall be fined . . . . and shall be adjudged by the court to be removed from office." It is sufficient both in form and substance. It "charges the crime substantially in the language of the act of assembly prohibiting the same," etc. Nothing more than that is required: Purd. 549, pl. 19.

For reasons given at length by the learned judge, in his opinion denying the motion for a new trial, there is no merit in the 4th specification.

The case was correctly tried, and the verdict of the jury, upon which judgment was entered, was fully warranted by the evidence before them.

The judgment of the court below is therefore affirmed; and, to the end that the same may be fully executed, it is ordered that the record be remitted to the court below.