## Commonwealth v. Reedy

*David Sharman*, for Commonwealth; *George B. Balmer*, for defendant.

SCHAEFFER, P. J., May 26, 1934.—We have before us the petition of George J. Gross, presented to the court of quarter sessions on May 21, 1934, in which he makes certain charges against various persons in regard to matters growing out of, or connected with, the prosecution of James A. Reedy for embezzlement, to no. 106, June sessions, 1933. The petition is captioned under the title Commonwealth v. James A. Reedy and is given, by the petitioner, the number and term of that case. Among other things, the petition avers, in paragraph 26: "Reedy was duly convicted and has been refused a new trial. His present petition is on the ground of after-discovered evidence"; and, in paragraph 39: "yesterday the court filed an opinion dismissing the defendant's petition for a new trial. But no discussion was had therein of the bona fides of the presentation of said petition." The prayer of the petition is that the court "set a time

for hearing the charges that the defendant's petition was not presented in good faith."

In one paragraph, the petition charges a certain individual with perjury but it does not say where or before what tribunal the perjury was committed; other individuals are charged with subornation of perjury and with conspiracy to thwart the Commonwealth in its prosecution of Reedy by illegal means. The facts of Reedy's conviction and of the refusal of his petitions for a new trial are also averred.

In its form and purport, the petition is without legal precedent. It contains charges of crime and misdemeanors against persons named, but is not supported by the affidavit of any witness as to the facts upon which the charge of crime is based. The petitioner in his affidavit merely swears that "the facts are true to the best of his knowledge, information, and belief"; he nowhere asserts that he has personal knowledge of the criminal acts charged, and he gives no list of witnesses upon whose testimony he relies to make out the charges of perjury, subornation of perjury, and conspiracy.

The matters are not alleged to have been committed in the presence of the court. They must be supported, if at all, by the testimony of witnesses.

The petition asks for a hearing before the court to inquire into the bona fides or good faith of the petition in which Reedy asks for a new trial. But to what end? As the petition itself asserts, the application for a new trial has been refused, and the only thing remaining to be done in the Reedy case is to impose sentence. Manifestly neither justice nor the Commonwealth has therein been thwarted.

The purpose of the petition is not to enable the court to form a sounder judgment upon the nature and extent of the sentence to be imposed upon Reedy. An allegation that a convicted defendant committed perjury in his own behalf at his trial and conspired with others so to do, even if presented by the district attorney, would not warrant a sentence upon any other offense than that of which he was convicted. Former convictions of other offenses, if any, might be considered by the court. But as to any supposed offenses for which he was never convicted or even indicted he must be presumed to be innocent, and such presumption outweighs the accusation. For such offenses, he can be prosecuted in the ordinary manner.

It must be clear, therefore, that what Mr. Gross now seeks is in reality a proceeding in the nature of a criminal prosecution against those he names. His desire is to punish them for the offenses of which he says they are guilty. It is no longer a question of the mere vindication of justice against Reedy, for his conviction, to be followed by a sentence by this court, constitutes such vindication. But Mr. Gross desires this court, upon his petition filed, to award a hearing at which he can produce evidence to substantiate his charges. The parties named in the petition as offenders or conspirators, except Reedy, are not, however, before this court. Neither has Mr. Gross asked for process to have them brought within our jurisdiction; nor would we be justified in law in permitting the process of this court to be used to bring these persons to such hearing, for to do so would be to subject those persons to a criminal proceeding by information, which, as we shall see, is prohibited by our Constitution. The parties named would therefore be under no legal obligation to attend, and the hearing, if held, would necessarily be one-sided or ex parte. It could achieve no purpose other than the open publication of charges against the citizens named, and it must ever be remembered that, under our Constitution and laws, each of them is presumed to be innocent. "The principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elemen-

tary, and its enforcement lies at the foundation of the administration of our criminal law": Coffin v. United States, 156 U. S. 432, 453. They would be publicly branded as criminals before their guilt had been established. Such a proceeding would rightly be condemned by every person who has at heart the maintenance of our law and of the civil rights of all citizens.

It is also prohibited by section 10 of the bill of rights embodied in the Constitution of our State, which reads: "No person shall, for any indictable offense, be proceeded against criminally by information, except in cases arising in the land or naval forces, or in the militia, when in actual service, in time of war or public danger, or by leave of the court for oppression or misdemeanor in office."

The offenses charged by Mr. Gross are indictable by the grand jury; they are not within any of the exceptions. Persons who fall within the exceptions are deprived of certain rights accorded by our law to other accused persons. One of these rights is not to be proceeded against criminally by information. "Criminal proceedings by information were odious to our forefathers and were oppressive to the citizens": Commonwealth v. Hurd et al., 177 Pa. 481, 484. A proceeding by information, referred to in our bill of rights, was a proceeding by which the King or his legal representatives brought an accused person to trial without the intervention of a grand jury—that is, upon a mere statement of the charge without a true bill having first been found by a grand jury. This was the method of procedure in the ill-famed Court of Star Chamber: 1 Stephen, History of the Criminal Law of England, 294, 296. Such a proceeding is the instrument of tyranny and oppression and, as such, has by our fundamental law been prohibited.

In Commonwealth v. Zortman, 16 Dist. R. 969, the grand jury returned a presentment to the court, based not upon their own knowledge of the facts but upon the statements of other persons, and the court, not knowing these to be the facts, directed the district attorney to prepare and submit to the grand jury an indictment against the persons named in the presentment. Upon motion to quash the indictment so found, it was held that, as the presentment was not made or based upon the personal knowledge of the grand jury and as the defendants named therein were not charged with a misdemeanor in office, the presentment was in violation of the provision of Article I, sec. 10, of the State Constitution and therefore, as there was no urgent necessity for the exercise of this extraordinary power, the indictment was quashed, even though the court had directed the submission of the indictment.

Any use of the process of this court to bring before us, for hearing upon the petition now before us, any of the persons charged therein would be to subject them to a criminal proceeding by information. The persons so charged have a constitutional right to require that a true bill first be returned by the grand jury of our county before they shall be called upon to answer. They have the right to be secure " 'from an open and public accusation of crime, and from the trouble, expense, and anxiety of a public trial before a probable cause is established by the presentment and indictment of a grand jury;' and 'in case of high offences' it 'is justly regarded as one of the securities to the innocent against hasty, malicious, and oppressive public prosecutions' ": Ex parte Bain, 121 U. S. 1, 12.

For the protection of the accused there are certain basic principles in our system of criminal law: "*First.* Every man is presumed to be innocent until the contrary is shown; and if there is any reasonable doubt of his guilt, he is entitled to the benefit of the doubt. . . . *Second.* In general, no person can be brought to trial until a grand jury on examination of the charge has found

reason to hold him for trial. . . . *Third.* The prisoner is entitled to trial by a jury of his peers, who are chosen from the body of the people with a view to impartiality, and whose decision on questions of fact is final. *Fourth.* The question of his guilt is to be determined without reference to his general character. . . . *Fifth.* The prisoner cannot be required to criminate himself. . . . *Sixth.* He cannot twice be put in jeopardy for the same offense. . . . *Seventh.* He cannot be punished for an act which was not an offence by the law existing at the time of its commission; nor can a severer punishment be inflicted than was declared by law at that time": Bouvier, Law Dictionary (3d ed.) 731.

Upon none of these may we trench without danger to individual liberty. And one of these is that, as we have seen, no person not within the exceptions set forth in our bill of rights may be brought to trial "until a grand jury on examination of the charge has found reason to hold him for trial."

Although perhaps not with due legal particularity, Mr. Gross' petition does charge violations of the law of the Commonwealth. There are, however, time-honored and commonly known methods to bring the issue of guilt or innocence to trial. The present method is not one of them.

In In re Lloyd et al., 3 Clark (5 Pa. L. J.) 55, 57, there is set forth by Judge King a very full statement of the various criminal proceedings recognized by the laws of Pennsylvania from which, for the sake of clarity, we quote at some length: "Criminal proceedings in Pennsylvania, may be properly divided into ordinary and extraordinary. With the former or ordinary mode of procedure, every citizen of common intelligence is familiar. A warrant of arrest founded on probable cause, supported by oath or affirmation, is first issued against the accused by some magistrate having competent jurisdiction. On his arrest he hears 'the nature and cause of the accusation against him,' listens to the testimony of the witnesses 'face to face,' has the right to cross-examine them, and may resort to the aid of counsel to assist him. It is not until the primary magistrate is satisfied by proof that there is probable cause that the accused has committed some crime known to the law, that he is further called to respond to the accusation. He is then either bailed, or committed to answer before the appropriate judicial tribunal, to whom the initiatory proceedings are returned for further action. On this return, the law officer of the Commonwealth prepares a formal written accusation, called an indictment, which with the witnesses named in the proceedings as sustaining the accusation, are sent before a grand jury composed of not less than twelve, nor more than twenty-three citizens, acting under oath, only to make true presentments; who again examine the accuser and his witnesses, and not until at least twelve of this body pronounce the accusation to be well founded by returning the indictment a true bill, is the accused called upon to answer, whether he is guilty or not guilty, of the offence charged against him. No system can present more efficient guarantees, against the oppressions of power or prejudice, or the machinations of falsehood and fraud. The moral and legal responsibilities of a public oath, the liability to respond in damages for a malicious prosecution; are cautionary admonitions to the prosecutor at the outset. If the primary magistrate acts corruptly or oppressively, in furtherance of the prosecution, and against the truth and justice of the case, he may be degraded from his judgment seat. By the opportunity given to the accused of hearing and examining the prosecutor and his witnesses, he ascertains the time, place, and circumstances of the crime charged against him, and thus is enabled, if he is an innocent man, to prepare his defence, a thing of the hardest practicability if a preliminary hearing is not afforded to him. . . . Hence the inestimable value of preliminary, public investigations, by which the accused can be truly informed, before he comes to trial, what is

the offence he is called upon to respond to. It is by this system that criminal proceedings are ordinarily originated. Were it otherwise, and a system introduced in its place, by which the first intimation to an accused of the pendency of a proceeding against him, involving life or liberty, should be given, when arraigned for trial under an indictment; the keen sense of equal justice, and the innate detestation of official oppression which characterizes the American people, would make it of brief existence. It is the fitness and propriety of the ordinary mode of criminal procedure, its equal justice to accuser and accused, that render it of almost universal application in our own criminal courts, and make it unwise to depart from it, except under special circumstances, or pressing emergencies.

"These specialties give rise to the extraordinary modes of criminal procedure which will now be considered.

"The first of these is, where criminal courts of their own motion call the attention of grand juries to and direct the investigation of matters of general public import, which, from their nature and operation in the entire community, justify such intervention. The action of the courts on such occasions, rather bear on things than persons; the object being the suppression of general and public evils, affecting in their influence and operation communities rather than individuals and therefore, more properly the subject of general than special complaint. Such as great riots that shake the social fabric, carrying terror and dismay among the citizens; general public nuisances affecting the public health and comfort; multiplied and flagrant vices tending to debauch and corrupt the public morals, and the like. In such cases the courts may properly, in aid of inquiries directed by them, summon, swear, and send before the grand jury, such witnesses as they may deem necessary to a full investigation of the evils intimated, in order to enable the grand jury to present the offence and the offenders. But this course is never adopted in case of ordinary crimes, charged against individuals. Because it would involve, to a certain extent, the expression of opinion by anticipation, on facts subsequently to come before the courts for direct judgment; and because such cases present none of those urgent necessities which authorize a departure from the ordinary course of justice. In directing any of these investigations, the court act under their official responsibilities, and must answer for any step taken, not justified by the proper exercise of a sound judicial discretion.

"Another instance of extraordinary proceedings, is where the attorney-general ex-officio prefers an indictment before a grand jury, without a previous binding over or commitment of the accused. That this can be lawfully done, is undoubted. And there are occasions where such an exercise of official authority would be just and necessary, such as where the accused has fled the justice of the state, and an indictment found, may be required previous to demanding him from a neighboring state, or where a less prompt mode of proceeding might lead to the escape of a public offender. In these, however, and in all other cases, where this extraordinary authority is exercised by an attorney-general, the citizen affected by it is not without his guarantees. Besides, the intelligence, integrity, and independence, which always must be presumed to accompany high public trust, the accused unjustly grieved by such a procedure, has the official responsibility of the officer to look to. If an attorney-general should employ oppressively, this high power, given to him only to be used when positive emergencies, or the special nature of the case requires its exercise, he might be impeached and removed from office for such an abuse. The court, too, whose process and power is so misapplied, should certainly vindicate itself, by protecting the citizen. In practice, however, the law officer of the Common-

wealth always exercises this power cautiously; generally under the directions of the courts, and never unless convinced that the general public good demands it.

"The third and last of the extraordinary modes of criminal procedure known to our penal code, is that which is originated by the presentment of a grand jury. A presentment, properly speaking, is the notice taken by a grand jury of any offence from their own knowledge or observation, without any bill of indictment being laid before them at the suit of the Commonwealth. Like an indictment, however, it must be the act of the whole jury, not less than twelve concurring on it. It is, in fact, as much a criminal accusation as an indictment, except that it emanates from their own knowledge, and not from the public accuser, and except that it wants technical form. It is regarded as instructions for an indictment. That a grand jury may adopt such a course of procedure, without a previous preliminary hearing of the accused, is not to be questioned by this court. And it is equally true, that in making such a presentment, the grand jury are entirely irresponsible either to the public or to individuals aggrieved; the law giving them the most absolute and unqualified indemnity for such an official act."

Judge King has made it clear that this court may not refer the present matter to the grand jury. As he points out such action is lawful for the investigation only "of matters of general public import, which, from their nature and operation in the entire community, justify such intervention" and the action of the courts on such occasions bears on "things" rather than "persons". Or, as Judge Ludlow has said in The Grand Jury v. The Public Press, 4 Brewst. 313, 317: "The Court never acts against individuals charged with specific crimes. If such crimes have in any case been committed, every magistrate may issue a warrant, and the Court is open to hear criminal charges in all cases; but in every such instance the party charged with crime has a responsible prosecutor upon the record, who may, if he swear falsely, be indicted for perjury, and also be liable for a suit for damages." See also address of John C. Bell, Esq., 13 Dist. R. 815, 828, and In re Grand Jury, 4 Northamp. 374, 376.

In Commonwealth v. Green, 126 Pa. 531, a district attorney's bill for a misdemeanor was quashed. The court on page 537 says that the charge of the late Judge King in In re Lloyd et al., supra, "has in a number of cases received the approval of this court" and goes on to say: "Three exceptions to the general method of procedure are there recognized. The first of these is, 'where criminal courts, of their own motion, call the attention of grand juries to, and direct the investigation of, matters of general public import, which, from their nature and operation in the entire community, justify such intervention.' This power of the court, it is said, will only be thus exercised, however, in the investigation of general and public evils, such as great riots, general public nuisances, and flagrant vices; it will not be applied in cases of ordinary crime.

"The second exception is, 'where the attorney-general, ex officio, prefers an indictment before a grand jury, without a previous binding over or commitment of the accused.' This power is properly exercised where there is occasion for great haste in applying the machinery of the law, or where the exigencies of the case and the public interests may reasonably require such action to be taken. . . .

"The third exception is that which is originated by the presentment of a grand jury."

The court must refrain from exercising extraordinary prerogatives except in cases clearly defined by precedent, for the reason that all extraordinary methods of procedure tend to invade the fundamental rights of our citizens to

be secure in their persons, houses, and possessions. Furthermore, the court is the tribunal before which the guilt or innocence of the accused must ultimately be tried. The latter has an inherent right to be tried before an impartial court. It is therefore ever desirable that the court, before attaching a case for trial, should know nothing of the merits of the cause at issue. For that reason the court must be loath to direct prosecutions to be brought or to initiate criminal proceedings in any case, save where the offense is committed in its presence.

Nor does Mr. Gross' petition aver any facts which would indicate a necessity for resort to any extraordinary procedure. Reedy was tried and convicted in June 1933. There is an alderman in each ward of this city and at least one justice of the peace in each borough and township of the county, before any of whom the petitioner could have gone and, upon information supported by a show of probable cause, procured the arrest of the accused. But, so far as appears, he has gone to none of these. As a long-time member of the bar of this court, he cannot be supposed to have been unaware of the existence of this common and usual method of procedure; it is known to every reasonably well-informed citizen of the Commonwealth. His petition does not allege or offer to show that the district attorney of the county was in any sense a party to the alleged conspiracy to thwart justice; on the other hand, the conviction of Reedy by the jury and the successful opposition to two applications for a new trial are strongly indicative of the fact that the district attorney and his deputies have done their duty and will be ready to do so in the future. The usual orderly methods of instituting criminal prosecutions are therefore available and should have been utilized instead of attempting an unprecedented method, fraught with danger to the liberties of our citizens.

As was said by Paxson, J., in In re Memorial of the Citizens' Association, 8 Phila. 478, 480, 481: "As a general principle, any departure from the well established rules of law regulating the commencement of criminal prosecutions is to be avoided. We do not pursue the beaten path merely because it is such, but for the reason that experience has demonstrated that course to be the safer one. It is better for the commonwealth, and safer for the citizen. So jealous is the law of the liberty of the latter, that it throws around him certain safeguards which the courts cannot dispense with, save in a few exceptional cases; and then only to a limited extent, and for some reason of pressing necessity, or high public importance. . . .

". . . When parties come into court to ask us to exercise unusual powers, they ought to show that they have exhausted the usual remedies provided by law in such cases." And after quoting from the opinion of Judge King in In re Lloyd et al., supra, he says (p. 484): "He lays down the rule clearly in the paragraph cited, that it is only when a case presents *urgent necessities* that a departure from the usual course of proceeding can be justified. . . . But it is an extraordinary power; and should only be used on extraordinary occasions. No community would long tolerate its frequent, unnecessary, and indiscriminate use. . . .

"Let these petitioners resort to their legal remedies."

When Mr. Gross presented the present petition, he orally indicated a preference to have the hearing held before some judge called from another county without assigning any cause therefor. To adopt this suggestion would amount to the court's divesting itself of its proper jurisdiction without any rule of law to warrant it. It is the duty of this court to exercise its proper judicial functions, duly conferred upon it by law, in the absence of any reason to the contrary. And this duty cannot be shifted; it is imposed by law, can be compelled by mandamus, and no other judge can exercise the authority of this court

531

unless he be called to do so in accordance with the provisions of our law and statutes. The Act of April 14, 1834, P. L. 333, 349, sec. 37, the Act of March 18, 1840, P. L. 153, the Act of April 2, 1860, P. L. 552, and the Act of May 1, 1861, P. L. 494, establish the law governing the calling of another judge to sit in this court. Unless it appear that all three judges comprising this court were unable to sit within the provisions of one of these acts, or the pressure of business in the court required the services of an additional judge, no judge of a court of another county would be competent to sit: Crawford's Estate, 307 Pa. 102. No reason disqualifying any of the three judges of this court appears or is averred. Furthermore, no court nor judge could, under the law, hold such a hearing as Mr. Gross requests. This preliminary matter of the right to hold the hearing is simply a question of law and no more. No judge or judges, in our opinion, can do more than to decline to hold such hearing. This legal question is one that must be passed upon by the court of this county, and we have here decided it. The decision, like others, is subject to review through appropriate proceedings.

The real burden and purpose of this petition is contained in a group of allegations charging a number of individuals with conspiracy and subornation of perjury. If the court itself had directly witnessed the behavior complained of and from its own direct observation were of opinion that a crime had been committed, the court could summarily deal with the matter as a contempt, or could cause a prosecution to be instituted in the ordinary manner by information before a magistrate. This is familiar practice, though such circumstances rarely arise and do not exist here. Of course, it would manifestly be improper for us to express any opinion upon the truth of the facts set forth in the petition. But there is the time-honored, usual, and ordinary method of procedure by which their truth or falsity may be established. Until that has been tried, any action by this court would be wholly unwarranted in law, frowned upon by principle and precedent alike, and dangerous to the civil liberties of our people.

And now, to wit, May 26, 1934, the prayer of the petition is refused and an exception noted.                     From Charles K. Derr, Reading, Pa.