## Commonwealth *v.* Harry Manfredi, Appellant.

*Criminal law—Murder—Jury board—Panel.*

It is no ground for quashing an indictment that the president judge was not actually present when the names of jurymen were placed in the jury wheel; nor that the jury board occupied two months in the process of selecting jurors, and putting their names in the wheel; nor that the jury wheel was not filled before the first term of court, the defendant having been tried after the wheel was actually filled.

*Relationship of deputy sheriff to deceased.*

It is no ground for quashing an indictment for murder that the deputy sheriff who served the summons on the jurors was alleged to be related to the murdered man, where the deputy testifies that he was not certain that he was related to the deceased, although he might have been a second cousin.

*Criminal law—Murder—Felonious entry—Act of 1860.*

Upon an indictment for murder, the undisputed evidence was that the

prisoner had been at the house of the murdered man in the evening, that he stayed late and until told he must go, and then left unwillingly, if not angry, that he went to his home and there got a revolver, returned to the house about two o'clock in the morning, entered by a window, went upstairs, put out a light that was burning there, was grappled by decedent who was undressed and unarmed, and after a short scuffle, shot decedent, holding the pistol so close to his breast that the powder blackened the skin. *Held*, (1) that it was for the jury to determine with what intent the prisoner entered the house; (2) that a verdict and judgment of murder of the first degree should be sustained.

In such a case it was not improper for the court to call the jury's attention to the fact that if the prisoner entered the house for the purpose of committing one or the other of the felonies mentioned in the act of March 31, 1860, P. L. 402, and if the killing was done in perpetration of or attempt to perpetrate any such felony, the crime was murder of the first degree.

*Criminal law—Murder—Separation of jury.*

It is no ground for arresting a judgment on a verdict of murder of the first degree, that the jury was allowed to separate during the trial, where the alleged separation consisted in the jurymen sleeping in two adjoining rooms, but not communicating rooms in a hotel, six in each room, with the court officers in charge sleeping in an adjoining room which communicated with one of the jury rooms, and it appears that the doors were locked by the officers, and that there was no tampering or interference with the jury.

Argued May 22, 1894.   Appeal, No. 468, Jan. T., 1894, by defendant, from judgment of O. & T. Schuylkill Co., Sept. T., 1893, No. 750, on verdict for Commonwealth.   Before STER-RETT, C. J., GREEN, McCOLLUM, MITCHELL, DEAN and FELL, JJ.   Affirmed.

Indictment for murder.   Before BECHTEL, J.

No paper-books were filed in this case, but in appellant's history of the case it is stated that at the trial it appeared that about two o'clock on the morning of Aug. 16, 1893, George Ochs was shot and killed in his house in the borough of St. Clair, Schuylkill county, and on the same morning, about six o'clock, defendant was arrested for the murder and committed to await trial.   Defendant had spent the early part of the same evening with the family of Ochs, taking lunch and drinking beer. On the trial the Commonwealth contended that defendant, after leaving the house at about half past eleven o'clock, returned about two o'clock for the purpose of committing one of

the felonies mentioned in the act of 1860. Defendant on the other hand contended that he came back back to the house because of an arrangement between him and Mrs. Ochs, and that upon his return and entry into the house he was immediately assaulted by Ochs, and that, in the struggle to release himself, all which happened in the dark, defendant fired a pistol, and killed Ochs accidentally.

*Errors assigned* were as follows:

" 1. The court below erred in overruling the following motion, that the indictment and array of grand and petit jury should be quashed because neither the president judge, nor additional law judge, met and acted with the jury commissioners and sheriff of Schuylkill county when the jury wheel for 1893 was filled.

" 2. The court below erred in overruling the following motion to quash indictment and array of grand and petit jury, because the sheriff and jury commissioners failed to proceed with due diligence to fill the jury wheel for said county for the year 1893, in that their first meeting was held on Nov. 16, 1892, and the last on January 23, 1893, spending in all two months and eight days to fill said wheel.

" 3. The court below erred in overruling motion to quash the indictment and array of grand and petit jury, because the jury commissioners failed to fill the jury wheel for said county before the first Monday of the first term of court of common pleas of 1893.

" 4. The court below erred in overruling the motion to quash the indictment and array of grand and petit jury, because the sheriff failed to take the oath required in section 87 of the act of 1834 before he proceeded to unlock and lock and seal the jury wheel preparatory to the filling and after filling said jury wheel for 1893.

" 5. The court below erred in overruling the motion to quash the indictment and array of grand and petit jury, because the sheriff, Joseph Woll, and his deputy, George Ochs, the officers who served the summons on the grand jurors and petit jury for said November sessions, were by blood related to George Ochs, the deceased." [The deputy sheriff testified that he may have been a second cousin of the deceased, that he thought he was, but he was not certain of the relationship, and that he may

not have sustained that relationship.  The sheriff denied all relationship with the deceased.]

" 6.  The court erred in not instructing the jury what the different degrees of felony were, that is, failed to give a proper explanation to the jury of arson, rape, robbery and burglary, especially after calling the attention of the jury to " the commonwealth's claims that the prisoner had no arrangement to come to the house of George Ochs for the purpose of meeting Mrs. Ochs, and having intercourse with her, but that he came there for the purpose of committing one or the other of the felonies mentioned in the act of March 31, 1860.  We do not say whether such is a fact or not in this case, but if you find such to be the fact from all the evidence before you, then we say, in the language of the act itself, ' all murder which shall be committed in the perpetration of or attempt to perpetrate any arson, rape, robbery or burglary shall be deemed murder of the first degree.'

" 7.  The court erred in not charging the jury that the use of a deadly weapon, when fired in the dark and not aimed at the vital part of a person, as in the case of the prisoner at the bar, that under such circumstances, the firing of the pistol shot which killed George Ochs would not render him guilty of murder of the first degree, especially as the evidence in this case failed to show specific intent to take life, and no malice whatever was proven.

" 8.  The court erred in making his charge to the jury too general, and not applying it to the particular facts developed in the testimony.

" 9.  The court erred in denying a motion in arrest of judgment, because the jury separated nightly and occupied rooms not communicating, with no officer in attendance on the outside of said rooms, but sleeping in an adjoining room."

*Charles A. Snyder*, for appellant, cited : Purdon's Digest, vol. 1, 958 ; Commonwealth v. Lippard, 6 S. & R. 395 ; 2 Bl. Com. 354 ; Munshower v. Patton, 10 S. & R. 337 ; Thompson and Merriman on Juries, 109 ; 3 Whart. Cr. L., 7th ed. § 3042 ; Pfeiffer v. Com., 15 Pa. 468.

*James W. Ryan*, district attorney, for Commonwealth.

OPINION BY MR. JUSTICE MITCHELL, May 31, 1894 :

The first five assignments of error are all hypercritical and devoid of substance, and some of them frivolous.

The president judge is a constituent member of the jury board, and it is part of his duty to assist in the selection of jurors. There is no evidence that he did not do so in the present case, but even if he was not actually present when the names were put in the wheel, his absence would not vitiate the proceeding. The board may act by a majority, and there is no proof it did not do so.

That the jury board occupied two months in the process of selecting jurors and putting their names in the wheel may indicate unnecessary deliberation, but is no ground of complaint for want of care or diligence ; and that the wheel was not filled before the first term of court might have been a cause of objection by prisoners tried at that term, but certainly not to others tried after the wheel was actually filled.

As to the sheriff's oath and the alleged relationship to the murdered man of the sheriff and his deputy who served the summons on the jurors, it is sufficient that the court found the facts against the objections so far as the sheriff is concerned, and as to the deputy that his relationship was too doubtful on the evidence to be allowed any weight in the face of the clear affirmative proof of the correct and due performance of a merely ministerial duty.

The next three assignments relate to the charge. It is said that the learned judge failed to define or explain sufficiently to the jury the crimes, the effort to perpetrate which will make a killing murder of the first degree. It is by no means clear that he was bound to do so. The facts practically undisputed were that the prisoner had been at the house of the murdered man in the evening, that he stayed late and until told he must go, and then left unwillingly if not angry, that he went to his home and it is charged there got a revolver, returned to the house about two o'clock in the morning, entered by a window, went upstairs, put out a light that was burning there, was grappled by Ochs who was undressed and unarmed, and after a short scuffle, shot him, holding the pistol so close to his breast that the powder blackened his skin. Under such circumstances his presence in the house was presumably with some

criminal intent. What that intent was, was for the jury to determine. The commonwealth had given evidence that would have justified the jury in finding that it was revenge for the fancied slight earlier in the evening, in which case the killing would have been murder of the first degree without the necessity of any reference to the statutory provision about attempts at arson, robbery, etc. But in case the jury should take another view, the learned judge put before them clearly, and definitely though concisely, the meaning of the statute, and the crimes to which it refers. It is true he did not enter upon any discussion or definition of arson, robbery, burglary or rape, nor was it necessary he should do so. There was no hint of arson and therefore no need to define it; robbery and burglary were suggested by the circumstances, and the prisoner's own explanation of his going there, might be taken by the jury as pointing towards rape, if they believed he went there for the woman but without her invitation. But all of these terms are well understood as part of the general language, and their technical sense does not differ so far from their popular use as to need specific definition, where they are used not to describe the offence charged but only the attempt, as an element in the crime of murder. There was sufficient evidence to meet all the requirements of the statute as to murder of the first degree. If, as already said, the jury found that the killing was premeditated, for revenge, or that the pistol was fired at a vital part with deliberate intent to kill, under circumstances that did not reduce the grade of murder, no consideration of attempted crimes was necessary. If however the jury took the other view, the evidence justified the finding of an attempt as distinguished from a mere intent. The prisoner's entrance of the house was, as already said, presumably with some criminal intent. What the specific intent was, the jury might find from the whole evidence, and if they found it was one of the enumerated crimes that make an element of murder of the first degree, the entry and the acts done in the house were sufficient to constitute an attempt. Even in Kelly v. Com., 1 Grant, 484, a case that carried the law to the extremest verge in favor of the prisoner, it was said by Thompson, C. J., that "If the entry into the house of deceased had been shown to have been burglarious, with the

design to commit a rape, and the breaking and entry were pursuant to such design, it might have been considered, under such circumstances, evidence of an attempt."

The use of a deadly weapon has already been discussed incidentally. It is sufficient to say that the pistol was held close to the breast of the deceased, and fired so as to inflict a wound necessarily mortal in a very few minutes. The facts would not have justified a charge in the form asked by the appellant.

The complaint of too great generality in the charge cannot be sustained. The fact of the killing was admitted, the only questions for the jury were those of justification in self-defence, or the degree of the crime. The learned judge explained the law of self-defence fully, and no complaint is made on that point. After an elaborate review of the evidence on both sides, the learned judge stated the verdicts the jury might render, as not guilty, or guilty of murder of the first degree, of the second degree, or of manslaughter, and defined these offences clearly and fully. That covered the whole law of the case, and, followed by a favorable reference to the benefit of a doubt, left the prisoner no just ground of complaint.

The last assignment is that the jury were allowed to separate during the trial, and the separation consisted in sleeping in two adjoining but not communicating rooms, six in each room, with the court officers in charge sleeping in an adjoining room which communicated with one of the jury rooms. The doors were locked by the officers and there is no pretence that any tampering or interference with the jury, in any way, took place. The objection is without substance. The law prescribes that the jury in such cases shall be free not only from all outside influences, but from all appearance and opportunity of such interference. They are required therefore to be kept apart from other persons, and together as respects each other, but, subject to these requirements of necessity, they are entitled to every consideration and treatment conducive to health and comfort. This jury were quartered at a hotel, and to compel the whole twelve to sleep in one hotel room, or in rooms with interior communication, might not be possible without subjecting them to serious risk to health. The law makes no such unreasonable requirement. In Alexander v. Com., 105 Pa. 1, the separation

of the jury was under circumstances much more questionable than the present, but this court held that it was a matter which rested in the discretion of the court below.

Judgment affirmed and record remitted that sentence may be executed.