## Commonwealth, Appellant, *v.* Gross.

86

Argued April 18, 1952. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

*Kennedy Smith*, Assistant Deputy Attorney General, with him *Earle T. Adair, Henry S. Moore*, Special Deputy Attorneys General, and *Robert E. Woodside*, Attorney General, for appellant.

*James P. McArdle*, with him *Paul J. McArdle*, for appellees.

OPINION BY RENO, J., November 12, 1952:

An indictment charging Howard Gross, an employe of the City of Pittsburgh, with misdemeanors in office and fraudulent conversion of labor, time, materials, and supplies of the City was quashed by the court below, and the Commonwealth appealed to No. 98 April Term, 1952. Another indictment charging Gross, George Manko and Thomas Kilgallen with conspiracy to defraud the City was quashed as to Gross and Manko,[1] and from that order the Commonwealth ap-

---

[1] Concerning Kilgallen the court stated: "The three defendants above named have joined in a single motion to quash the indictment, but in this opinion we deal only with the situation of the

pealed to No. 99 April Term, 1952. The appeals were argued together in this Court and will be decided in one opinion.

The indictments were procured upon district attorney's bills or, more accurately, attorney general's bills. They were presented to the grand jury pursuant to the following orders of the court below, endorsed on the bills: "And now, to wit, this 2nd day of February, 1951, *the within Indictment based upon Presentment at No. 59 September Sessions 1950,* having been presented in Open Court, same is ordered filed and Charles J. Margiotti, Attorney General of the Commonwealth of Pennsylvania, is directed to submit the within Bill of Indictment to the Grand Inquest sitting for February, 1951, for its consideration." (Emphasis added.)

The references in the orders to the "Presentment at No. 59 September Sessions 1950", constituted the principal ground for quashing the indictments. As to that, the court below held: "The indicting grand jury, therefore, had direct notice that the bill of indictment was recommended by the special grand jury, an item of knowledge which might have been of determining weight in the decision to return a true bill. Since the presentment and recommendations of the special grand jury could easily have been influenced by the illegal invasion of the constitutional rights of these defendants, the bill of indictment and the action of the regular grand jury, based as it was on the presentment, were tainted with the same illegality."

The presentment was prepared and filed by a special investigating grand jury summoned upon the petition

___

defendants, Gross and Manko, the case of Kilgallen having been argued separately in conjunction with his motions to quash other indictments."

of the Attorney General of Pennsylvania,[2] wherein he charged, inter alia, that Gross, Manko and Kilgallen had cheated and defrauded the City.[3] Gross and Manko were called as witnesses before the investigating grand jury and for their refusal to testify were adjudged in contempt of court, a decision which this Court reversed in *Manko Appeal*, 168 Pa. Superior Ct. 177, 77 A. 2d 700. Without their testimony but upon the testimony of a hundred other witnesses,[4] the investigating grand jury returned a presentment recommending the indictment of Gross, Manko and Kilgallen.

Since the defendants had been named in the petition for the special investigating grand jury, they could not, upon a claim of constitutional privilege, be compelled to testify before it, *Manko Appeal,* supra, and they refused to testify. (The *Manko* opinion, supra, p. 179, reports: "[E]ach [Gross and Manko] declined to answer certain questions on the ground that the answers would incriminate [them].") They should not have been called as witnesses and they should not have been adjudged in contempt, but ultimately their constitutional rights were recognized and protected by this Court, and meanwhile they had not testified to any facts upon which the investigating grand jury based its recommendations. There was an attempt to invade their constitutional rights but the invasion was staunch-

---

[2] For the proceedings antecedent to the summoning of the special investigating grand jury, see *Margiotti Appeal*, 365 Pa. 330, 75 A. 2d 465.

[3] The investigating grand jury was properly called on the Attorney General's petition and the matters therein alleged were regularly committed to it by a charge of the court. Hence, we do not meet the type of objections sustained in *Com. v. Green*, 126 Pa. 531, 17 A. 878, and cognate cases.

[4] This fact is abstracted from the presentment which, although not a part of the instant record, was filed by appellees at the argument in this Court.

ly repelled by this Court. Perhaps the investigating grand jury was, as are petit juries sometimes, influenced by the defendants' failure or refusal to testify, but it does not follow that the indictments found by the succeeding grand jury were tainted with illegality.

The motions to quash did not question the form or the sufficiency of the indictments. The defendants relied exclusively upon extraneous matters to invalidate them. Although testimony can be taken upon such allegations, *Com. v. Bradney,* 126 Pa. 199, 17 A. 600,[5] no evidence was offered. Hence the statement that the reference in the orders of the court to the presentment[6] was "an item of knowledge which might have been of determining weight in the decision to return a true bill" rests upon abstract speculation. Nor can it be said, as the court below improperly assumed, that the indictments were based upon the presentment. To the contrary, as will appear, the presumption, in the absence of convincing countervailing evidence, is that the indictments were based solely upon the testimony of the witnesses whose names were endorsed thereon.

There is no evidence that the indicting grand jury saw the presentment or the endorsements on the bills referring to the presentment, or that mention was made

---

[5] It was formerly held that a *district attorney's bill,* submitted by leave of court, could not be quashed except for matters apparent on the face of the bill. *McCullough v. Com.,* 67 Pa. 30; *Harrison v. Com.,* 123 Pa. 508, 16 A. 611. Later cases, some of which are cited, hold that evidence of extrinsic irregularities is receivable.

[6] Virtually the same form was employed in *Com. v. Brownmiller,* 137 Pa. Superior Ct. 261, 265, 9 A. 2d 155, and in *Com. v. Hurd,* 177 Pa. 481, 485, 35 A. 682, an objection to a similar endorsement was held unmeritorious.

In the experience of this opinion-writer as a nisi prius judge, the same form of endorsement, mutatis mutandis, was uniformly employed as a statement of the ground which justified submission of district attorney's bills to grand juries.

of them in its presence, or that, having knowledge of them, the jurors jumped to improper conclusions. There is no evidence that testimony taken by the investigating grand jury was introduced or referred to before the indicting grand jury. Gross and Manko were not called before the indicting grand jury, and there is no evidence that it knew that they had refused to testify before the investigating grand jury. The testimony taken by the grand juries was not introduced in evidence on the motion to quash, and the court below abused its discretion by inspecting and considering the testimony adduced before the investigating grand jury and by partially resting its judgment upon the motion on its interpretation of that evidence.

Even if the indicting grand jury had knowledge of the orders and the references to the presentment, no sinister deductions may be drawn from that circumstance. Doubtless, grand juries are sometimes influenced by extrinsic considerations. They may be moved by the vigor with which a district attorney presents his testimony, by the emphasis laid by a presiding judge in his charge upon the definition of a specific crime, by the public interest in a pending case, and similar excitations. Such mental reactions are, however, imponderables that cannot be judicially weighed and to which the law attaches no significance, absent proof of actual prejudicial conduct. Certainly, a mere suspicion that such influences actuated a grand jury cannot invalidate an indictment. "In the absence of proof to the contrary, the presumption is in favor of the legality and regularity of the proceedings before the grand jury": *Com. v. Brownmiller*, 141 Pa. Superior Ct. 107, 113, 14 A. 2d 907, citing *Com. v. Edmiston*, 30 Pa. Superior Ct. 54. "No matter how irregular the investigatory proceedings before the grand jury may have been, the presentment at least furnished the dis-

trict attorney with information sufficient to justify his application for leave to present a district attorney's bill": *Com. v. Brownmiller*, 137 Pa. Superior Ct. 261, 267, 9 A. 2d 155.

A court should not sustain a motion to quash, based upon allegations of extraneous factors, "except in a clear case where it is convinced that harm has been done to the defendant by improper conduct that interfered with his substantial rights": *Com. v. Brownmiller*, 141 Pa. Superior Ct. 107, 116, 14 A. 2d 907, citing *Com. v. Haines*, 57 Pa. Superior Ct. 616, and *Com. v. Viscount*, 118 Pa. Superior Ct. 595, 179 A. 858. Harmless errors or irregularities will not vitiate an indictment. Proof that a grand jury heard irrelevant testimony, *Com. v. Spallone*, 154 Pa. Superior Ct. 290, 35 A. 2d 731; or hearsay evidence, *Com. v. Stoner*, 70 Pa. Superior Ct. 365, affirmed 265 Pa. 139, 108 A. 624; or incompetent witnesses, *Com. v. Padden*, 160 Pa. Superior Ct. 269, 50 A. 2d 722, will not invalidate an indictment where other proper evidence was adduced before it. And ordinarily, or at least in many circumstances, alleged defects or irregularities in the preliminary or antecedent proceedings will not be examined on a motion to quash. *Com. v. Mallini*, 214 Pa. 50, 63 A. 414; *Com. v. Brennan*, 193 Pa. 567, 44 A. 498; *Com. v. Valsalka*, 181 Pa. 17, 37 A. 405; *Com. v. Manfredi*, 162 Pa. 144, 29 A. 404; *Com. v. Wideman*, 150 Pa. Superior Ct. 524, 28 A. 2d 801; *Com. v. Murawski*, 101 Pa. Superior Ct. 430; *Com. v. Magid et al.*, 91 Pa. Superior Ct. 513; *Com. v. Williams*, 54 Pa. Superior Ct. 545.

Aside from the remote possibility that the indicting grand jury could have been influenced by the endorsements on the bills referring to the presentment, its proceedings and deliberations were competely free of harmful conduct. The investigating grand jury had indeed

committed legal error, but the iniquity of the investigators cannot be visited upon the indictors.

The court below relied upon *Com. v. Bane,* 39 D. & C., 664, which was adopted in *Manko Appeal,* supra, p. 180, for the proposition that persons named in a petition for a grand jury investigation are virtually defendants and cannot be compelled to testify before the grand jury against their will. As we read the *Bane* case, the defendants were indicted by the same grand jury before which they had been called as witnesses, a circumstance absent in this case. However that may be, if the case means that the action of an investigating grand jury in summoning and questioning persons accused of criminal conduct in a district attorney's petition for the investigation nullifies indictments found by the indicting grand jury whose proceedings are free of illegalities or irregularities and have not caused actual prejudicial harm, to that extent the decision is not approved.

The orders of the court below are reversed; the indictments are reinstated; and the records are remitted for further proceedings according to law.