Commonwealth *v.* Kilgallen, Appellant.

316

Argued September 27, 1954. Before STERN, C. J., STEARNE, JONES, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Joseph I. Lewis,* with him *Cooper, Hunter & Lewis,* for appellant.

*William H. Colvin,* Assistant Deputy Attorney General, with him *Charles D. Coll,* Special Deputy Attorney General and *Frank F. Truscott,* Attorney General, for appellee.

OPINION BY MR. JUSTICE CHIDSEY, November 8, 1954:

This appeal concerns the proper disposition of motions to quash criminal indictments found against the appellant.

On September 13, 1950 the Attorney General of Pennsylvania, duly authorized to act in the matter, petitioned the Court of Quarter Sessions of Allegheny County for an order summoning a special investigatory grand jury to inquire into an alleged widespread system of crime existing among public officials and employes of the City of Pittsburgh. On the same day the court granted the prayer of the petition and the special grand jury was summoned to No. 59 September Sessions, 1950. In his petition the Attorney General specifically and by name charged, among others, the appellant, Thomas E. Kilgallen, President of the City

Council, with the commission of bribery, misdemeanor in office, conspiracy, misdemeanor and fraudulent conversion. In its charge to the investigatory grand jury the court recited these specific charges set forth in the petition and instructed the grand jury to resolve them and if the evidence warranted, to recommend Kilgallen's indictment. Kilgallen was subpoenaed to testify before the special grand jury. Thereupon he personally appeared before the court, asserted that having been specifically accused of crime in the Attorney General's petition and in the charge made by the court to the grand jury, under Article I, Section 9 of the Pennsylvania Constitution [1] he ". . . should not be compelled to appear, testify or produce any evidence or documents in order that I may protect my constitutional rights and privileges and not waive the same.". The court directed him to appear and testify. The investigatory grand jury filed a presentment in which it recommended that Kilgallen be indicted for bribery, misdemeanor in office, fraudulent conversion and conspiracy, and under date of December 14, 1950 the court directed the presentment to be filed and ordered and directed the Attorney General and his assistant to submit indictments to a grand jury as recommended in the presentment. Six indictments against Kilgallen were then prepared accordingly, three of them charging bribery, and endorsed on each was the following order: "And now, to wit, this 2nd day of February, 1951, the within Indictment based upon Presentment at No. 59 September Sessions, 1950, having been presented in Open Court, same is ordered filed and Charles J. Margiotti, Attorney General of the Commonwealth

---

[1] Article I, Section 9 provides: "In all criminal prosecutions the accused . . . cannot be compelled to give evidence against himself, . . .".

of Pennsylvania, is directed to submit the within Bill of Indictment to the Grand Inquest sitting for February, 1951, for its consideration.". The indictments were submitted to the next regular grand jury at the February Sessions, 1951 and true bills were found as to each.

Kilgallen moved to quash the indictments and later petitioned the court for leave to take testimony in support of his motions to quash. In his motions and petitions as amended, he averred that he had testified before the investigatory grand jury at the direction of the court over his claim of immunity; that the record of his testimony so given was made available to the regular grand jury at the February Sessions, 1951 and was considered and used by it in returning the indictments. Rules were granted on appellant's petitions to take the testimony of individual grand jurors and to make the record of the proceedings before the special investigatory grand jury and as well of the indicting grand jury available to the court in support of the motions to quash. Attached to the petitions for the rules as an exhibit was the affidavit of one Paul Normandy, a member of the indicting grand jury, in which the affiant stated that the testimony given by Kilgallen before the special investigatory grand jury was at all times available to the affiant and the other members of the indicting grand jury and that excerpts from the testimony of Kilgallen before the investigatory grand jury were read by members of the Attorney General's staff to the indicting grand jury.

On June 16, 1953 the court filed orders dismissing the petitions to take testimony and the motions to quash. Appeals were taken to the Superior Court which handed down an opinion upholding the action of the court below. Ross, J. filed a dissenting opinion. The Superior Court on petition for reargument made the

following order: "And Now, March 19, 1954, reargument refused. But, because of the importance of the legal question involved, the case is certified to the Supreme Court under Section 10 of the Act of June 24, 1895, P. L. 212, 17 P.S. §197. Per Curiam.".

The Commonwealth contended in the Superior Court and contends here that no appeal lies from the refusal of a motion to quash an indictment. It is certainly true, as stated by the Superior Court, that ordinarily a defendant charged with crime does not have the right of appeal before his trial and conviction nor thereafter until final judgment and sentence. However, the Superior Court held that there may be exceptions to this rule, citing Superior and Supreme Court cases, inter alia, *Commonwealth v. Trunk et al.,* 311 Pa. 555, 167 A. 333, where at p. 565 it was stated that the rule ". . . should not be held one of universal application.", and *Commonwealth v. Ragone,* 317 Pa. 113, 176 A. 454, where this Court at p. 126 said: ". . . But this rule has, in exceptional cases and to safeguard basic human rights, been construed as not being one of unyielding inflexibility.". The Superior Court went on to say: "In our view the question of the validity of the indictments in these cases is one which under the circumstances should be decided in limine with finality. The nature of the charges affects the public interest, and the grounds for appellant's claim of immunity, provide the exceptional circumstance which justify us in entertaining the appeals in these cases.". We are not disposed to disagree with this conclusion.

In the Attorney General's petition for the convention of the investigatory grand jury Howard Gross and George Manko, city employes, were also specifically charged by name with cheating and defrauding the City of Pittsburgh, fraudulent conversion of the City's

property and conspiracy to misappropriate its labor and supplies, and the court after reciting these accusations charged the grand jury that if the evidence warranted, they should recommend their indictment. Gross and Manko were called before the grand jury but after giving their names claimed their constitutional privilege and refused to testify. This being reported to the court, each was adjudged in contempt and upon refusal to purge himself thereof, was sentenced to fine and imprisonment. Each appealed to the Superior Court which reversed the sentences for contempt, unanimously holding in an opinion by Judge (now Justice) ARNOLD that where one is charged with a specific crime or crimes in a petition for the calling of an investigatory grand jury, he cannot be compelled to testify before such grand jury if he claims his constitutional privilege: *Manko Appeal,* 168 Pa. Superior Ct. 177, 77 A. 2d 700. We are in accord with this statement of the law. The exercise of the privilege of the accused against self-incrimination is not confined to his trial but applies to all stages of a criminal proceeding against him: *Commonwealth v. Musto,* 348 Pa. 300, 35 A. 2d 307. It would be a perversion of the privilege to compel the accused to assist in his own prosecution.

Gross and Manko were subsequently indicted by the regular grand jury but the court quashed the indictments. The Commonwealth appealed and the Superior Court reversed and reinstated the indictments: *Commonwealth v. Gross,* 172 Pa. Superior Ct. 85, 92 A. 2d 251. The quarter sessions court had held that because the orders endorsed on the indictments, set forth supra, disclosed that the indictments were based upon the investigatory grand jury's presentment and that ". . .'The indicting grand jury, therefore, had direct notice that

the bill of indictment was recommended by the special grand jury, an item of knowledge which might have been of determining weight in the decision to return a true bill. Since the presentment and recommendations of the special grand jury could easily have been influenced by the illegal invasion of the constitutional rights of these defendants, the bill of indictment and the action of the regular grand jury, based as it was on the presentment, were tainted with the same illegality.' ". In the course of its opinion, the Superior Court reaffirmed its finding in the *Manko* case, saying: "Since the defendants had been named in the petition for the special investigating grand jury, they could not, upon a claim of constitutional privilege, be compelled to testify before it, Manko Appeal, supra, and they refused to testify. (The Manko opinion, supra, p. 179, reports: '[E]ach [Gross and Manko] declined to answer certain questions on the ground that the answers would incriminate [them].') They should not have been called as witnesses and they should not have been adjudged in contempt, but ultimately their constitutional rights were recognized and protected by this Court, and meanwhile they had not testified to any facts upon which the investigating grand jury based its recommendations. There was an attempt to invade their constitutional rights but the invasion was staunchly repelled by this Court. Perhaps the investigating grand jury was, as are petit juries sometimes, influenced by the defendants' failure or refusal to testify, but it does not follow that the indictments found by the succeeding grand jury were tainted with illegality.". The Superior Court then went on to hold in effect that the action of an investigatory grand jury in summoning and questioning persons accused of criminal conduct in a district attorney's petition for the investigation

does not nullify indictments found by the indicting grand jury *where the proceedings before the latter are free of illegalities or irregularities and have not caused actual prejudicial harm.* We agree for the reasons stated by Judge RENO in the *Gross* case that the order endorsed on the indictments indicating that the latter were based on the investigatory grand jury's presentment did not of itself invalidate the indictments. In arriving at its conclusion the Superior Court also pointed out that there was no evidence that testimony taken by the investigatory grand jury was introduced or referred to before the indicting grand jury nor that the indicting grand jury knew that Gross and Manko had refused to testify before the investigatory grand jury and that since the testimony taken by the two grand juries was not introduced in evidence on the motion to quash, the court below abused its discretion by inspecting and considering the testimony adduced before the investigatory grand jury and by partially resting its judgment upon the defendants' motions on its interpretation of that evidence.[2]

We have referred at some length to the *Gross* case, because the Commonwealth cites and places reliance thereon. We find nothing contained in the opinion of the Superior Court which resolves the question posed in the present case. There is a marked difference in the situation here presented. In the *Gross* case Manko and Gross did not testify before the investigatory grand jury other than to give their names and ad-

---

[2] In their motions to quash Manko and Gross complained solely that their "subpoenaing, swearing and compulsion to testify" in the investigatory grand jury proceeding was in violation of their constitutional rights and operated to invalidate indictments returned pursuant to the recommendation of the investigatory grand jury.

dresses, and the indicting grand jury did not even know that they had appeared and refused to testify. Here it is averred in the motions to quash, and not denied by the Commonwealth, that Kilgallen at the direction of the court testified generally before the investigatory grand jury and that his testimony was made available to, considered and used by the indicting grand jury.

In his petitions, as amended, to take testimony in support of his motions to quash, appellant averred that after being ordered by the court to appear and testify, he reiterated his claim to immunity before the investigatory grand jury, and attached to his petitions is an exhibit purporting to be the statement made by him to the grand jury claiming the rights guaranteed to him under the Pennsylvania and Federal Constitutions. However, even if appellant did not reiterate his claim to immunity when he appeared before the grand jury, he testified at the court's order and thus under judicial compulsion. Surely it would be reversible error if at a trial the accused testified after claiming his constitutional privilege because the trial judge ordered him to testify. The Attorney General argues that the only way to test the privilege is not to testify when ordered to but to refuse to testify and test the matter by contempt proceedings or by habeas corpus and cites a statement made by the Federal District Court in *United States v. Johnson,* 76 F. Supp. 538. An examination of this case discloses not only that the language referred to was applied to a witness and not to the defendant in the proceeding, but that it was dictum unnecessary to the ruling on the question presented. We have been referred to no case holding that a defendant must test his constitutional privilege against self-incrimination by resort to contempt proceedings

or habeas corpus. In any event, we will not adopt such conception as the law of this jurisdiction. A waiver of constitutional rights must be voluntary. It is not voluntary when made under judicial compulsion.

We come to the most serious matter for consideration and that is the propriety of taking testimony in regard to the alleged infringement of the defendant's rights by having before the indicting grand jury the testimony which Kilgallen gave before the investigatory grand jury at the direction of the court despite his claim of immunity. While grand juries take an oath to keep their counsels secret and their deliberations are legally sealed from divulgence, the so-called secrecy rule does not prevent it being shown that the defendant's rights were violated by the introduction of testimony in direct contravention of constitutional inhibitions.

It is contended that the indictments found by the indicting grand jury against appellant did not necessarily rest upon the admission of his testimony before the investigatory grand jury because other testimony was presented to it, attention being called to the names of other witnesses endorsed on the indictments who it is claimed presumably were called and testified. It is true, as stated by the Superior Court in the *Gross* case, that ". . . Proof that a grand jury heard irrelevant testimony, Com. v. Spallone, 154 Pa. Superior Ct. 290, 35 A. 2d 731; or hearsay evidence, Com. v. Stoner, 70 Pa. Superior Ct. 365, affirmed 265 Pa. 139, 108 A. 624; or incompetent witnesses, Com. v. Padden, 160 Pa. Superior Ct. 269, 50 A. 2d 722, will not invalidate an indictment where other proper evidence was adduced before it. . .". But we know of no case in this jurisdiction that denies the right to challenge the validity of an indictment on the ground of violation of

the accused's constitutional rights here asserted—and so challenge successfully upon proper and sufficient proof.

Assuming arguendo that an indictment may be upheld despite the reception of criminating evidence in violation of the accused's rights under Article I, Section 9 of the Constitution if there is other evidence to support the indictment, here the appellant was charged with bribery and the Commonwealth is confronted with the provisions of Article III, Section 32 of the Constitution which provides: "Any person may be compelled to testify in any lawful investigation or judicial proceeding against any person who may be charged with having committed the offense of bribery or corrupt solicitation, or practices of solicitation, and shall not be permitted to withhold his testimony upon the ground that it may criminate himself or subject him to public infamy; *but such testimony shall not afterwards be used against him in any judicial proceeding,* except for perjury in giving such testimony, and any person convicted of either of the offences aforesaid shall, as part of the punishment therefor, be disqualified from holding any office or position of honor, trust or profit in this Commonwealth.". (Emphasis supplied). The crime of bribery applies to the giver and to the taker of the bribe. Each is the accomplice of the other.[3] Under this provision of the Constitution any

___

[3] Here, under the charges in the Attorney General's petition, recited by the court to the investigatory grand jury, Kilgallen was charged with the acceptance of substantial improvements to his own property made by others without cost to him as a bribe for the favorable exercise of his influence as a city councilman. In its presentment which did not cover all the matters referred to it, but as stated therein, was a partial one limited to what it termed the "Free Work Probe", the grand jury recommended indictments

testimony which appellant was compelled to give before the investigatory grand jury on the charges of bribery could not be used against him in the proceeding before the indicting grand jury which was a "judicial proceeding". The constitutional provision contains no limitation in the prohibited use. The use proscribed is complete, unequivocal and without reservation, precisely as if the testimony had never been uttered. Therefore its use, whether or not testimony of other witnesses was adduced before the indicting grand jury, was a clear violation of Article III, Section 32 of the Constitution. Had there been a trial and a conviction and the same testimony presented against the defendant, the conviction could not be upheld notwithstanding the fact that other sufficient evidence might have supported the verdict. It is not a question whether the hearing body, petit or grand jury, was influenced by such testimony. It may not be assumed that it was not. The ban is absolute [4] in the absence of voluntary waiver. The language of the provision is comprehensive. The

---

against two corporations and two individuals who were the alleged givers of the bribe and against Kilgallen who was the alleged taker. The record discloses that Kilgallen was compelled to testify generally during this phase of the grand jury's investigation.

[4] Under rules of statutory and constitutional construction, Article I, Section 9, and Article III, Section .32 of the Pennsylvania Constitution must be read harmoniously and both be given effect. Under the former an accused cannot be compelled to give any testimony whatsoever: *Manko Appeal*, supra, and see Wigmore on Evidence, 3rd Edition, Vol. 8, §2268, 2., p. 392. If one accused of receiving a bribe is compelled to testify against the giver of it under Article III, Section 32, he necessarily incriminates himself, and in order to reconcile and make congruous the two constitutional provisions, the *use* of any of his testimony under Article III, Section 32 must be construed to be as fully proscribed as its *giving* under Article 1, Section 9.

testimony compelled to be given against one who may be charged with bribery may not thereafter be used against the one so testifying *"in any judicial proceeding"*.

If appellant's testimony before the investigatory grand jury was made available to, considered and used by the indicting grand jury as averred in appellant's motions and petitions, there was a clear infraction of the constitutional prohibition, and none of the indictments returned against him could stand. But the question remains whether appellant's motions and petitions properly and sufficiently raised the issue in a manner requiring inquiry. The mere assertion of impropriety on the part of an indicting grand jury does not ordinarily suffice. As said by Justice (now Chief Justice) STERN in *Commonwealth v. Judge Smart*, 368 Pa. 630, 84 A. 2d 782, any such attack upon the validity of an indictment ". . . should never, under any circumstances, be instituted except on the basis of *credible, detailed, sworn and persuasive averments by witnesses* of the irregularities complained of.". (Emphasis supplied). Here the petitions in support of the motions to quash had attached thereto the affidavit of a grand juror who swore that Kilgallen's *testimony* before the investigatory grand jury was at all times available to the affiant and the other members of the indicting grand jury and that excerpts from his testimony were read by members of the Attorney General's staff to the indicting grand jury.

The averments in the motion to quash in the *Smart* case were sworn to by one of the defendants as ". . . based upon information received in an interview with one of the members of the said Grand Jury which returned said indictment, . . .". In commenting thereon it was stated at p. 638: ". . . Who the grand juror was

is not revealed. Neither is it disclosed with whom the interview was had; the affidavit in regard to the fact of its occurrence being by one of the defendants,— made categorically and not on information and belief,— it must have been he who held or attended the interview with the grand juror. The information thus derived was, of course, hearsay and unsworn to. . .". The averments in support of the motion were characterized as "unsubstantial and dubious". In the present case the affidavit relied on is that of a grand juror himself who without disclosing his counsels or that of his fellows specifically swears that appellant's testimony before the investigatory grand jury was made available and read to the indicting grand jury. The fact thus deposed was clear and unequivocal and required no further detail to disclose a clear infringement of appellant's constitutional rights; and its truth was not denied by the officers of the Commonwealth in their answers to the motions to quash, in their petitions to dismiss the motions, nor in their brief or oral argument. It may be added there is nothing in the record justifying an assumption that the defendant solicited the grand juror's statement.

It is to be observed that in the *Smart* case, apart from the flimsy proof offered in support of the charges contained in the motions to quash, the charges were improper conduct by the prosecuting officers and that the presentment of the grand jury was read to the indicting grand jury. There was no charge or complaint that the testimony of the defendants was made available to and excerpts therefrom read to the indicting grand jury.

As we have indicated, if the testimony of the appellant before the investigatory grand jury was made available and parts thereof read to the indicting grand jury, there was a violation of appellant's constitutional

rights and the indictments found against him would be invalid; and we think that under the motions and petitions, the pertinent averments of which were not denied by the Commonwealth, the appellant should have been allowed to present proof of such violations as prayed for in the petitions.

In so holding we must not be considered as departing from a strong adherence to the rule that ordinarily, for the reasons set forth in the *Smart* case, grand jurors cannot be permitted to impeach indictments regularly returned by them. However, as recognized in that case, the impenetrability of grand jury proceedings is subject to exceptions and we think that the instant case presents a justifiable exception. If appellant's constitutional safeguards were ignored as contended, it was a flagrant transgression of the letter and spirit of our organic law.

The order of the Superior Court is reversed and the record is remitted to the quarter sessions court for reinstatement of the motions to quash, with direction to make absolute the rules issued on the appellant's petitions to take testimony.

----

DISSENTING OPINION BY MR. CHIEF JUSTICE HORACE STERN:

I dissent and would affirm the order of the Superior Court on the opinion of Judge HIRT, 175 Pa. Superior Ct. 52, 103 A. 2d 183.