**UNITED STATES of America, Plaintiff-Appellant,**

v.

**Nathan FROMIN et al., Defendants-Appellees.**

**Nos. 75–2242, 75–2243 and 75–2244.**

United States Court of Appeals, Sixth Circuit.

Argued April 9, 1976.

Decided Aug. 23, 1976.

Rehearing Denied Oct. 6, 1976.

appellee, Nathan Fromin, John Fauci and George Kastanas, made false material declarations before a Grand Jury concerning loans made to them by John L. Iacofano, Jr. and the payments made on these loans in violation of Sec. 1623, Title 18, U.S.C.

Appellee Fromin was indicted on six counts. Counts one, two and three were based on testimony taken at a Grand Jury hearing on November 26, 1974. Counts four, five and six were based on testimony taken before a different Grand Jury on December 18, 1974. The one count indictment against John Fauci charged that he gave false testimony before a Grand Jury on November 1, 1974. Appellee Kastanas was indicted on three counts, charging him with making false declarations before a Grand Jury on November 25, 1974.

The Grand Juries involved were investigating possible extortionate extensions of credit—loan sharking—by Iacofano and others. The appellees were called as known victims of the loan sharking operation as witnesses before the Grand Juries. There came a point in the testimony of each appellee when they were suspected of lying and they were so advised by Government counsel. They were repeatedly given opportunities to correct their testimony.

In addition to the two times that appellee Fromin testified before a Grand Jury, as alleged in his indictment, he testified before a Grand Jury on September 25, 1974. During this testimony he was advised by Government counsel that he was appearing as a witness and not as a subject of investigation or as a potential defendant in any investigation. He was told what the penalties of perjury were and repeatedly admonished during each session of the Grand Jury before which he appeared that his failure to tell the truth could subject him to an indictment for perjury.

At one point in the September testimony, Government counsel stated:

"Mr. Fromin, my opinion with regard to your testimony is that you have probably committed perjury on numerous occasions

Alan J. Sobol, U. S. Dept. of Justice, Appellate Sec., Washington, D. C., Frederick M. Coleman, U. S. Atty., Cleveland, Ohio, for defendants-appellants.

Donald N. Krosin, Michael G. Dane and Edward F. Marek, Cleveland, Ohio, for plaintiff-appellee.

Before WEICK and LIVELY, Circuit Judges and CECIL, Senior Circuit Judge.

CECIL, Senior Circuit Judge.

The Government appeals[1] from orders of the United States District Court for the Northern District of Ohio, suppressing certain testimony given before the Grand Jury by the appellees herein. The District Court, on March 27, 1975, returned three separate indictments charging that each defendant-

---

1. Sections 2518(10)(b) and 3731, Title 18 U.S.C.

this morning. That is my personal opinion, and I am expressing it to you."

. . *    · ·*    *    *    *    *

"I want you to likewise consider, sir, that you have lied to this Grand Jury. You can expect to be indicted for perjury by this Grand Jury."

At the outset of his testimony, John Fauci was told that he was called before the Grand Jury as a witness to

"certain aspects on an ongoing investigation that is presently pending before this Grand Jury"

and that they were

"looking into the loan operation of John Iacofano and his associates."

At a point in his testimony he was admonished that he was under oath and advised of the penalties of perjury. Later in his testimony he said that he would not answer any more questions. Government counsel advised him that he could claim his privilege under the Fifth Amendment to refuse to answer any questions that would incriminate him. He made no objection on the basis that the answers to any questions would incriminate him.

A few questions later counsel said,

"Thus far, it is my personal opinion that you have lied to this Grand Jury, because I do know, in fact, that you did have a payment schedule with John Iacofano."

He was further advised that he was called as a witness and that the Government did not want to cause him harm but that he would be indicted for perjury unless he took advantage of the opportunity to correct his testimony.

In the beginning of the testimony of George Kastanas he was told by Government counsel,

"They (the Grand Jury) are looking into possible violation of federal law which

may have occurred in the Greater Cleveland Area and you should be aware that you are in no way a subject of our investigation. You are merely a witness who we want to bring down and talk to."

At certain points in his testimony Government counsel admonished him that he believed he was lying and he advised him of the penalties of perjury. Counsel also gave the witness ample opportunity to correct his testimony.

The district judge sustained motions before trial to suppress parts of this testimony of each defendant appellee. The district judge held in his comprehensive opinion on Fromin that at the point where he was admonished that he was giving false testimony he became a virtual or putative perjury defendant. The trial judge then sustained the motion to suppress certain parts of the Grand Jury testimony because of a failure to give a *Luxenberg*[2] warning. Such a warning was construed as being advice to the witness of his Fifth Amendment privilege against self-incrimination. The motions to suppress of the other two appellees were sustained for the same reason.

■ We are of the opinion that the district judge misinterpreted the teaching of *Luxenberg*. In this case the two defendants-appellants were indicted as a result of their Grand Jury testimony, for crimes involving fraud, previously committed. Whereas in the case at bar, the appellees were indicted for perjury presently committed in the presence of the Grand Jury. We held in *Luxenberg*[3] p. 246, that the defendants-appellants were not entitled to be advised of their Fifth Amendment rights to refuse to answer incriminating questions. We said,

"The extent to which one must be advised of this right depends upon whether one is

**2.** *United States v. Luxenberg,* 374 F.2d 241, (6th Cir.)

**3.** See the following cases pertinent to the subject: *United States v. Monia,* 317 U.S. 424, 433, 63 S.Ct. 409, 87 L.Ed. 376; *Counselman v. Hitchcock,* 142 U.S. 547, 12 S.Ct. 195, 35 L.Ed. 1110; *United States v. Mandujano,* 496 F.2d

1050, 1053 (5th Cir. 1972); *United States v. Winter,* 348 F.2d 204 (2nd Cir. 1965); *United States v. Parker,* 244 F.2d 943 (7th Cir. 1957); *United States v. Scully,* 225 F.2d 113, 116 (2nd Cir. 1955); *United States v. Nickels,* 502 F.2d 1173 (7th Cir. 1974); *United States v. Orta,* 253 F.2d 312 (5th Cir. 1958)

a defendant in custody of the authorities or whether one is merely a witness. One who is a defendant must be advised that he may refuse to answer incriminating questions and that anything he says may be used against him. A person testifying before a grand jury as a witness need not be so advised, but does retain the right to decline to give an incriminating answer. (Citations omitted). This Court has held that a person who is virtually in the position of a defendant must be accorded the same rights as a defendant. (*Stanley v. United States*, 245 F.2d 427 (C.A.6)). Consequently a person against whom the prosecuting attorney is not seeking an indictment need not be advised of his right to refuse to answer incriminating questions. (Citations omitted). The fact that a person appeared in the capacity of a witness and testified before a grand jury without being so advised, does not furnish a basis for dismissing an indictment subsequently returned against such individual based, in part, upon his testimony. (Citations omitted). It is the duty and right of such witness to invoke the privilege against self-incrimination and refuse to answer questions."

In *Stanley v. United States, supra,* we recognized the principle,

"The protection afforded a defendant in custody is also extended to a witness who is virtually in the position of a defendant." (*Commonwealth v. Kilgallen,* 379 Pa. 315, 108 A.2d 780)

but did not apply it because it was not pertinent to the facts of the case. We stated there (P. 434):

"A sharp distinction is made in the decisions between testimony given before a grand jury by a defendant in custody under a criminal charge and by a witness who is later charged with crime."

In *Kilgallen* as reported in *Stanley,* an Attorney General's petition charged Kilgallen by name with bribery and other crimes. A Grand Jury was called in response and instructed that, if it found the facts true, it should indict Kilgallen. He testified under protest before the investigating Grand Jury and claimed his privilege against self incrimination. His testimony was considered by the Grand Jury which later indicted him. We commented that, under these circumstances, his Grand Jury testimony should properly have been excluded.

We hold that under the rule of these cases, the district judge was in error in considering that the appellees, herein, were virtual defendants and entitled to advice or warning of their privilege against self incrimination under the Fifth Amendment.

In a recent decision the Supreme Court in *United States v. Mandujano,* —— U.S. ——, 96 S.Ct. 1768, 48 L.Ed.2d 212, reversed the Fifth Circuit in *United States v. Mandujano,* 496 F.2d 1050, which purported to follow *Luxenberg* requiring full Miranda warnings under facts somewhat similar to the cases at bar. In that case the witness had been given Fifth Amendment warnings. In a decision without an opinion by a majority of the Court it was held that a witness under such circumstances was not entitled to Miranda warnings. Here we are not concerned with Miranda warnings.

In the cases before us, the district judge correctly declined to follow the decision of the Fifth Circuit in *United States v. Mandujano, supra,* where it was held that full Miranda warnings should have been given a grand jury witness who had allegedly become a virtual or putative defendant. However, we believe that district court erred in holding that the appellees were entitled to be advised of their Fifth Amendment right to refuse to answer where a truthful answer would incriminate them. They had been sworn to tell the truth and were repeatedly warned during their grand jury testimony of the consequences of perjury. They were also advised that they were not being questioned as participants in the loan sharking activities under investigation, but only as witnesses. They never became virtual or putative defendants with respect to a prosecution for loan sharking and thus never became entitled to Fifth Amendment warnings. *Luxenberg* does not hold that a mere witness before a grand jury who is not a prosecution target for the

activities being investigated becomes a virtual or putative defendant who is entitled to Fifth Amendment warnings because the false answers he gives as a witness may lead to his being prosecuted for perjury.

In reversing the Fifth Circuit's *Mandujano* decision, the Supreme Court repeated its previous holding to the effect that a person called as a witness before a grand jury is legally bound to give testimony and that this is an absolute duty in the absence of a claim, asserted by the witness, of privilege against self-incrimination. Mr. Chief Justice Burger, in announcing the judgment of the Court, found it unnecessary to determine whether any warning is required to be given a grand jury witness but said, "Assuming *arguendo,* that respondent was indeed a 'putative defendant' that fact would have no bearing on the validity of a conviction for testifying falsely." —— U.S. at ——, 96 S.Ct. at 1780. Mr. Justice Stewart pointed out, in concurring in the judgment of the Court, in *United States v. Mandujano, supra,* at ——, ——, 96 S.Ct. 1768, 1792, that the grand jury testimony of the witness was "relevant only to his prosecution for perjury and was not introduced in the prosecution for attempting to distribute heroin." Under these circumstances, in the absence of prosecutorial misconduct amounting to a denial of due process, a perjury prosecution may ensue and the questioned grand jury testimony is not subject to suppression.

The district judge held that counts four and five of the Fromin indictment were duplicative of counts one and two respectively. He further held that at trial the government would be required to elect upon which set of counts it would proceed, had the testimony of counts four and five not been suppressed for failure to give *Luxenberg* warnings. We leave this for the judge to determine at trial, with this comment.

Count five is not duplicative in all respects of count two. In *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 the Court held,

" * * * the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact which the other does not."

In the case at bar, counts four and five require proof of a different time and before a different Grand Jury than do counts one and two.

■ There is no merit to the claim of appellee, George Kastanas that Section 3731, Title 18 U.S.C. does not confer jurisdiction upon the Court of Appeals to hear this appeal.

■ The Government claims that the district judge erred in sustaining a motion [4] to suppress testimony before a Grand Jury which was based on conversations of Fromin with Iacofano during a wiretap of Iacofano's telephone. The wire tap in question was applied on July 5, 1974 on application of the Government. Fromin claims that the wire tap was illegal as to him, because his name was wrongfully omitted from the order authorizing the interception, in violation of Section 2518(4)(a), Title 18 U.S.C.

Section 2518(4)(a), Title 18 U.S.C. requires that the order authorizing the interception of any telephone shall identify the person, if known, whose communications are to be intercepted. It is explained in *United States v. Kahn,* 415 U.S. 143, 155, 94 S.Ct. 977, 984, 39 L.Ed.2d 225 (1974):

"Title III (Section 2518(4)(a), Title 18 U.S.C.) requires the naming of a person in the application of interception order only when the law enforcement authorities have probable cause to believe that that individual is 'committing the offense' for which the wiretap is sought."

There was a previous wire tap of Iacofano's telephone on June 12, 1974. During this wire tap there were tape recordings of conversations between Fromin and Iacofano. The district judge concluded that, from these taped conversations of the June 12th wire tap, the Government could have determined that there was probable cause to

---

4. Section 2518(10), Title 18 U.S.C.

believe that Fromin was an aider and abettor in the crime being committed by Iacofano. Thus the order for the wire tap should have included the name of Fromin.

Appellee Fromin had a dual relationship with John Iacofano. He operated a pizza shop for him, either as an employee or as a tenant and he ran a card game on a share basis with Iacofano after the pizza shop closed in the afternoon. Fromin was required to pay Iacofano fifty or sixty dollars a week for the use of the pizza shop.

To be an aider and abettor,

" * * * the *accused must have knowledge of the criminal plan* and must consciously share in the criminal act." (Emphasis added) *United States v. Dallas,* 418 F.2d 221, 222 (6th Cir. 1969).

In *United States v. Bryant,* 461 F.2d 912, 919 (6th Cir. 1972), this Court quoted Judge Learned Hand, that the defendant must

"in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed." *United States v. Peoni,* 100 F.2d 401, 402 (2nd Cir. 1938).

\* \* \* \* \* \*

"The defendant must act or fail to act with the specific intent to facilitate the commission of a crime by another." (Citations omitted)

" 'But knowledge that a crime is being committed, even when coupled with presence at the scene, is generally not enough to constitute aiding and abetting.' " *United States v. Garguilo,* 310 F.2d 249, 253 (2nd Cir. 1962).

We consider now the nature of the intercepted calls of June 12th, which involved appellee Fromin. Mr. Krosin, counsel for Fromin classified those calls as follows:

"I counted nine calls which either gave instructions to persons to leave money at the pizza shop or made reference to people leaving money there."

These were calls with reference to leaving money at the pizza shop, not participated in by Fromin.

"I counted approximately 15 conversations between Nate Fromin and John Iacofano. These are calls initiated by either one of them or conversations which took place during the course of a conversation between Mr. Iacofano and a third party, some of which related to instructions about money left at the pizza shop, and some of which related to business relating solely to the pizza shop, some of which related to business dealings between Nate Fromin and Mr. Iacofano other than leaving money at the pizza shop."

\* \* \* \* \* \*

" * * * seven calls between Mr. Iacofano and various other people such as his brother Donald, which discussed the relationship of Nate Fromin and the pizza shop and John Iacofano. Those are calls to which Mr. Fromin was not a direct party." Tr. April 3, 1975.

Mr. Krosin further said,

"I think there were several phone calls that simply referred to him as being the person at the pizza shop, but it was after the time that Mr. Fromin had taken the place over."

\* \* \* \* \* \*

"Someone would say, 'I left the money at the pizza shop. I left it with the guy up there.' It was after the time that Mr. Fromin had assumed the management of it."

Not all of the intercepted calls to which Mr. Krosin refers involve conversations of Fromin. Appellee Fromin had subjects to discuss with Iacofano, such as the operation of the pizza shop, the card game and his own debts, including the pizza shop rent and his personal loan.

Iacofano was being investigated under Sections 891 et seq. Title 18, U.S.C. for extortionate extension of credit. The potential crimes under these statutes are complicated and involved. It appears that the extent of Fromin's connection with the crime of Iacofano was to receive payments of Iacofano's customers or victims at the pizza shop.

While this depository was the subject of some of their telephone conversations, we conclude that it falls far short of making Fromin an aider and abettor in Iacofano's crime. There is no indication that he knew on what terms Iacofano was loaning money or what extortionate means he was using to make collections. These are the essential elements of the crime not receiving payments.

Finally, we conclude that the Government did not have probable cause to believe that Fromin was committing the offense under investigation. The district judge is in error in granting the motion to suppress the conversations recorded pursuant to the order of July 5, 1974, and the evidence derived therefrom.

We reverse and remand the instructions to vacate the orders suppressing the Grand Jury testimony of the appellees, the order suppressing the conversations of Fromin recorded pursuant to the intercept order of July 5, 1974 and the order dismissing counts four and five of the Fromin indictment.

WEICK, Circuit Judge, concurring in the result.

In finding that these grand jury witnesses were not entitled to suppression of their testimony, the majority Opinion first holds that the District Court was in error in considering these men to have been virtual defendants while testifying and entitled to advice or warning of their privilege against self incrimination. It is not necessary to overrule the District Court on this point to reach the majority's result, because both Mr. Chief Justice Burger, in announcing the decision of the Court in *United States v. Mandujano*, —— U.S. ——, 96 S.Ct. 1768, 48 L.Ed.2d 212 (1976), and Mr. Justice Stewart, in his concurring opinion, indicate that even a putative defendant is not entitled to suppression of false testimony in a subsequent perjury prosecution if no Fifth Amendment warnings were given. The question whether these witnesses became putative perjury defendants before the grand jury is simply irrelevant to the propriety of suppression.

Furthermore, we cannot hold a finding of the District Court to be error unless there is no substantial evidence to support it. The record establishes overwhelming supporting evidence. The prosecutor virtually told each of these witnesses during his testimony that he was suspected of lying before the grand jury, and that prosecution for perjury would be considered. By way of example I quote some of the prosecutor's remarks to Kastanas:

Q. Well, it appears to me, Mr. Kastanas, that you have lied to this Grand Jury when you told this Grand Jury that you had never borrowed money from John Iacofano?

A. I said I never.

Q. I don't want to go through a long, long list of questions. I would like to afford you this opportunity, sir, for you to explain to this Grand Jury just how much you have borrowed from John Iacofano over the years? The amounts of the various loans. When you took out the loans. How much interest was paid by you. Who did the collecting and I want to afford you this opportunity to recant what I feel has been perjury to this Grand Jury.

Now, there is a provision under federal law, sir, that when you lie to a Grand Jury if you decide that you want to tell the truth, you can be given the opportunity to tell the truth and I'm giving you that opportunity now to recant your perjury.

You will not be indicted for perjury if you do this, sir. Is there anything you want to tell this Grand Jury?

(App. 273-74).

MR. GALE: We want to give you every opportunity to tell the truth. I'm going to play the first part of this conversation one more time.

I personally don't think you have told the truth today. I'm not a member of the Grand Jury but I don't think you have told the truth.

I want to give you that last opportunity to explain this tape and explain you

loan relationship with John Iacofanos [sic].

(App. 281–82).

A JUROR: Mr. Gale, sir, perhaps this gentleman doesn't understand what the penalty for lying is. I don't believe I recall you telling him that fact.

Does he really realize what he can get into by doing this?

MR. GALE: Mr. Kastanas, as one of the members of the Grand Jury has noted, they regard lying before this judicial body as an extremely serious offense.

For each and every lie before this judicial body, you can be indicted for perjury or making a false statement; they are the same.

The penalty for each and every lie is up to a $10,000 fine and five years in jail.

I want you to be aware of that, sir. We did not call you down here to get you in trouble. We merely want the truth so that this investigation can proceed in an orderly fashion.

Now, I personally believe you have committed perjury before this body.

(App. 284–85).

Q. You realize, of course, that if you lie in front of this Grand Jury, you run the risk of going to jail for five years each time that you tell a lie; do you understand that now?

A. Yes.

(App. 286).

On this record I cannot agree that the District Court erred in finding that these witnesses became putative perjury defendants while testifying before the grand jury.

I should also like to emphasize here the distinction between a putative perjury defendant and a putative defendant as to other crimes. A putative perjury defendant is in a unique situation before a grand jury, and unlike other putative defendants, does not expose himself to prosecution by admitting his crime. A witness who commits perjury may exculpate himself by re-canting his testimony and telling the truth, 18 U.S.C. § 1623(d), and the recantation operates as a bar to prosecution for perjury. Thus a witness who admits committing perjury does not incriminate himself, but exculpates himself instead. When a witness commits apparent perjury, a recitation that he has a right to not incriminate himself would be counterproductive to both the witness and the government. An offer to allow him to recant would serve the interests of both parties by encouraging the witness to tell the truth and allowing him to avoid prosecution.